[No. 18579.    Department Two.    December 4, 1924.]

LUCAS MORLEY et al., Appellants, v. MARY MORLEY et al.,
Respondents.[1]

HOMESTEAD (4, 21, 22)—HEAD OF FAMILY—RIGHTS OF SURVIVING
SPOUSE. The surviving husband, who was not the "head of a family"
and had no one dependent upon him for support, could not, under
Rem. Comp. Stat., §§ 528-561, acquire homestead rights in commu-
nity property by filing a declaration of homestead after the death of
his wife, and his rights must be considered with reference to the law
as it existed at the time.

DESCENT AND DISTRIBUTION (13)—REAL PROPERTY—VESTING OF
TITLE. Upon the death of a wife, an undivided one-half interest in
community real property vests immediately in the children by vir-
tue of her will in their favor.

JUDGMENT (153-156)—COLLATERAL ATTACK—WANT OF NOTICE—
EFFECT OF JUDGMENT RECORD. An ex parte order in probate, setting
aside a homestead to a surviving husband, may be collaterally at-
tacked in a suit by the heirs, where it does not show or recite any
notice to, or appearance on behalf of, the owners of the property.

PEMBERTON, J. dissents.

Appeal from a judgment of the superior court for
Snohomish county, Joiner, J., entered January 5, 1923,
dismissing an action to quiet title and for a partition,
after a trial on the merits to the court. Reversed.

S. A. Bostwick and J. Y. Kennedy, for appellants.

Noah Shakespeare and Louis A. Merrick, for re-
spondents.

MITCHELL, J.—John Morley and Dinah Morley, as
husband and wife, were owners of the real property in-
volved in this action, situate in Snohomish county. She
died July 30, 1915, leaving a will by which she devised
to her husband a life estate in the real property, re-
mainder over to their children, Lucas Morley, Hester

[1]Reported in 230 Pac. 645.

M. Watson, Elizabeth M. Johnson and Richard Henry
Morley. All the children at that time were of the age
of majority. Her will, a nonintervention one, was ad-
mitted to probate on October 11, 1915, and Lucas Mor-
ley and Hester Morley Watson, who were nominated
in the will as executor and executrix, were appointed
as such by an order of court at the time the will was
admitted. On November 5, 1915, an appraised inventory
was filed in the estate, after which it does not appear
that anything further was done by the executors.

On December 13, 1915, John Morley executed and
acknowledged and filed in the office of the auditor of
Snohomish county a purported declaration of home-
stead covering the property in question, stating it to
have been the community property of himself and wife,
and on the same day presented his petition to the judge
of the court reciting the making and filing of the dec-
laration of homestead upon what was alleged to have
been community property, and praying for an order
adjudging the property to be his homestead and declar-
ing it to be his sole and separate property. Such an
order was entered on that day.

The proceedings were entirely *ex parte*—without any
notice to or appearance by or on behalf of either of the
children. Neither the declaration of homestead, the
petition, nor the order contains any declaration, alle-
gation, or finding that John Morley was the head of a
family, or that anyone whatever was dependent on
him. Indeed, the testimony in the trial of the present
case showed that, at the time of making the purported
declaration of homestead, he did not have any one de-
pendent on him, that he was not the head of a family,
and lived alone on the place, and continued to so occupy
the premises until his marriage to the respondent Mary
Morley, in the year 1918. No child was born of this
marriage.

John Morley died, testate, January 25, 1922, leaving his wife Mary surviving him. By his will, he made minor provisions for each of his children, and devised all the balance of his property, including the real estate in this controversy, to his wife Mary. This will, which purports to be a nonintervention one, was admitted to probate on February 14, 1922. All of the children testified that they understood their father continued to occupy the premises because of his interests as surviving husband and his life estate, under their mother's will. Shortly after their father's will was admitted to probate, upon learning of the filing of the purported declaration of homestead by John Morley and of the order of the court thereon, and learning that Mary Morley claimed to own the whole of the property, the children promptly instituted this action against her for a judgment declaring them to be the owners of an undivided one-half of the property, under the will of their deceased mother, and for a partition of the property in kind, or by a sale of it and a division of the proceeds. Upon the issues and proof of the respective parties, judgment was entered dismissing the action, from which the plaintiffs have appealed.

First as to the homestead. Confessedly the property was community property of John Morley and his wife Dinah. He having, however, attempted to perfect a homestead right in it in 1915, his right thereto, if any, must be considered with reference to the law as it existed at that time. *In re Bloor's Estate,* 109 Wash. 554, 187 Pac. 396. The law as it existed at that time was ch. 64 Laws of 1895, p. 109; Rem. Comp. Stat., §§ 528-561. *In re Bloor's Estate, supra.* The purported declaration of homestead was made and filed, as already noticed, after the death of his wife, upon property they had owned as community property, and at a time when he was not the head of a family and had no minor

child nor any one dependent on him. Under similar circumstances, this court, in the case of *In re Bloor's Estate, supra,* denied the widow a homestead; and in the opinion in that case said, with reference to the right of a surviving husband to a homestead, as follows:

"In *In re Borrow's Estate,* 92 Wash. 143, 158 Pac. 735, there was involved the claim of a homestead in community property made by the surviving husband, by the filing of his declaration of homestead after the death of his wife, there being no minor child or other person under his care and maintenance, and hence he not being the 'head of a family' within the meaning of the homestead law of 1895, Rem. Code, § 553. In that case it was squarely held that such surviving husband could not successfully claim a homestead in the community property because of his disqualification, in that he was not the head of a family when he made his claim therefor, after the death of his wife."

It follows, therefore, that the filing of the declaration of homestead by John Morley was ineffectual for any purpose; and since his declaration and petition to the probate court both showed the death of his wife, that the property at her death was community property, and failed to show that he was the head of a family, the court was powerless to approve his declaration and set aside and declare the property to be his homestead.

But, it is contended on behalf of the respondent that the present action is a disallowable collateral impeachment of the order of the superior court declaring the property to be the homestead of John Morley. We have already observed that the order was obtained at an *ex parte* hearing on the same day the declaration was filed in the auditor's office and his petition to the court was filed and presented. The judgment or order purporting to set aside the homestead does not contain

any recital that notice to the children, appellants here, was ordered, given or served. Nor does it show that thev appeared at that hearing. Upon the death of Mrs. Morley an undivided one-half interest in the property vested immediately in the children, by virtue of her will and § 1366, Rem. Comp. Stat. [P. C. § 9863].

With what show of reason or authority may it be said that one may not, in any manner, contest the validity of a judgment of any court made upon the *ex parte* showing of an adversary attempting to deprive him of his property, when the judgment relied on does not show or recite the giving of notice or appearance on behalf of the one whose property is attempted to be taken and when it is the fact, as is conclusively proven in this case, that such party did not have any notice or appear at the hearing when and upon which that judgment was entered?

In the case of *In re Lloyd's Estate*, 34 Wash. 84, 74 Pac. 1061, it appears that, upon the death of Michael Lloyd, his son was appointed administrator of his estate; whereupon the widow, on her *ex parte* application and showing, obtained an order setting aside the real property of the estate, which was the separate property of her deceased husband, as a homestead for her and her minor children during the administration proceedings. Thereafter, it being found necessary to sell the property to pay debts and expenses, she resisted the administrator's petition for an order of sale, alleging, among other things, that the premises had been set aside by the court to her as her homestead. Her objections and protest were denied, this court saying:

"The court *could not,* and evidently did not, intend, on a mere *ex parte* application, to make a final determination as to the title or homestead feature of the property in question, to the prejudice of the other heirs

and the creditors of the estate. In *In re Kruger's Estate,* 55 Pac. 1056, the supreme court of California, in considering the question of orders made in probate proceedings, on *ex parte* applications, by which the property and rights of the parties interested in an estate are affected, uses this language: 'It cannot require the citation of authority in support of the proposition that one may not thus be deprived of his property without process of law'."

The rule is well stated in 15 R. C. L. (Judgments) p. 846, under the subdivision "Collateral Attack for Want of Notice," as follows:

"In order that a judgment may properly be rendered against a person he must be made a party and jurisdiction over him must be obtained, either by due service of process or voluntary appearance. It is a fundamental principle of the common law, founded in justice and sound policy, that no judgment or decree affecting the person or property of an individual shall be valid, unless notice, actual or constructive, is given to the individual whose rights are to be affected. Every man is entitled to an opportunity to be heard in a court of law upon every question involving his rights or interests, before he is affected by any judicial decision of the question. Such notice and opportunity to be heard are essential elements of due process of law, and the sentence or judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights, and is not entitled to any respect in any other tribunal."

See, also, Black on Judgments (2d ed.), vol. 1, § 218.

The judgment is reversed and the cause remanded to the trial court with directions to enter judgment declaring the appellants to be the owners of, and entitled to an undivided one-half interest in, the real property involved, and to proceed in the matter of partitioning it between the respective parties.

MAIN, C. J., BRIDGES, and FULLERTON, JJ., concur.

PEMBERTON, J., dissents.