[No. 13125-1-II. Division Two. February 10, 1992.]

FLORENCE LEJEUNE, ET AL, *Appellants*, v. CLALLAM COUNTY, ET AL, *Respondents*.

*Kenneth Day Williams* and *Johnson & Williams,* for appellants.

*David Bruneau, Prosecuting Attorney,* and *Christopher Melly, Deputy; Stephen E. Oliver* and *Platt, Irwin, Colley, Oliver & Wood,* for respondents.

MORGAN, J. — Neighbors Florence Lejeune and Vern Wright appeal approval of a preliminary plat application submitted by Herbert Sahar. We reverse.

The subject property is owned by Sahar and located in Clallam County. It is comprised of about 60 acres. Lejeune and Wright own adjacent property.[1] For convenience, we will hereafter refer to Lejeune and Wright as the neighbors.

---

[1] RCW 58.17.090 requires notice to adjacent landowners, and it defines adjacent owners as those whose property is within 300 feet of a boundary of the proposed subdivision. By affidavit accompanying her application for a writ of

Until 1984, the property was zoned "agricultural/residential", a categorization that did not involve zoning restrictions. On December 18, 1984, the Board of Commissioners for Clallam County approved a new ordinance that zoned the property "RRI" — rural residential with a minimum lot size of 1 acre. The Board provided that the new ordinance would take effect 10 days later, on December 28, 1984.

On December 27, 1984, Sahar applied for approval of a preliminary plat of the property.[2] The plat proposed to divide the 60 acres into 100 lots.

The neighbors opposed the plat during hearings before the planning commission and, later, before the Board of Commissioners. At a hearing held on July 16, 1985, the Board applied the zoning laws last in effect on December 27, 1984,[3] and disapproved the plat. The vote was 2 to 1, with Commissioners Jones and Duncan voting to disapprove and Commissioner Gaydeski voting to approve.

review, Lejeune stated that she and Wright were "property owners in the immediate adjacent area".

[2]Lejeune and Wright contend that the finding that Sahar filed his plat application on December 27, 1984, is not supported by substantial evidence. We hold to the contrary. It is true, as the neighbors say, that the plat application was only dated December 1984; that the County failed to stamp it with date received; and that a county planner's letter later said it was "submitted" December 28, 1984. Nevertheless, the receipt that the County gave Sahar when he paid the plat application fee is dated December 27, 1984, and numbered 5078. It falls snugly in sequence between receipts 5077 and 5079, both of which were also issued on December 27, 1984.

[3]Citing *Norco Constr., Inc. v. King Cy.*, 97 Wn.2d 680, 649 P.2d 103 (1982) and other cases, the neighbors argue that the Board was required to apply the zoning code that took effect on December 28, 1984, rather than the one in effect on December 27, 1984. *Norco*, however, holds that a county must judge a preliminary plat based on land use laws in effect during the 90-day period established by RCW 58.17.140 for acting on the plat. 97 Wn.2d at 689-90. It does not consider what laws a county must apply when its zoning laws change during the pendency of the 90-day period. Here, we assume that the Board had the option of providing that plat applications would be judged by laws in effect on the date of filing, and that it acted lawfully when it utilized that option at the 1985 and 1988 hearings.

On August 14, 1985, Sahar appealed by petitioning the Clallam County Superior Court for a writ of review. *See* RCW 58.17.180. He joined the County as a party, but not the neighbors. The requested writ, hereinafter called the 1985 writ, was issued but never heard on the merits. It languished for nearly 3 years, during which Commissioner Jones was replaced on the Board by Commissioner Cameron.

On April 19, 1988, Sahar and the Board stipulated[4] that the Superior Court should remand the matter back to the Board "for further consideration of the original preliminary plat . . . or any revised version thereof which the applicant may present . . . or the Commissioners may suggest. . . ." The neighbors did not participate in the stipulation.

On April 20, 1988, the Superior Court entered an order based on the stipulation. The order was agreed to by the County and Sahar. The neighbors were not notified of its presentation to the court, and they did not agree to it. The order did not find that the Board had committed prejudicial error when it made its 1985 decision.

After the matter had been returned to the Board pursuant to the agreed order, Sahar asked the Board to reconsider his December 27, 1984, plat application, as amended in minor respects not pertinent here. A hearing was scheduled for July 12, 1988. The neighbors were given notice, they appeared, and they objected to reconsideration. The Board's minutes state:

> John Pickensheets . . . [p]resented the Board with petition signed by himself and 31 others almost all directly surrounding the proposed development. This is in objection to reconsideration by the Board. . . . Mrs. LeJune [*sic*] asked him to speak for her . . ..

The neighbors' objection was overruled. Although the Superior Court's agreed order of remand had its genesis in

---

[4]The stipulation was actually signed by Sahar's counsel and a deputy prosecuting attorney acting as legal representative of the Board. The neighbors contend that the deputy prosecutor lacked proper authority from the Board, but we do not reach that issue.

the stipulation between Sahar and the County, the presiding commissioner said:

> I noticed one of the petitions I have got here is an objection to the reconsideration. This is something the Commissioners didn't initiate. We couldn't initiate it. It was done by mandate of the Superior Court Judge. This [apparently the agreed order of April 20, 1988] says we remand this to the Board of Commissioners for reconsideration. However, there is no statement from the Judge on what particular areas that should be reconsidered on the thing; just the basic, flat statement to review the — reconsider the whole thing.

On July 19, 1988, the Board, again applying the zoning laws last in effect on December 27, 1984, approved the plat.[5] Commissioner Duncan again voted to disapprove and Commissioner Gaydeski again voted to approve. The new commissioner, Commissioner Cameron, voted to approve.

On August 15, 1988, the neighbors appealed by petitioning the Clallam County Superior Court for another writ of review. The requested writ, hereinafter called the 1988 writ, was issued and heard on the merits. On August 18, 1989, the Superior Court upheld the Board's 1988 decision, and on the same date the neighbors filed their first notice of appeal.

On September 21, 1988, after the 1988 writ had been issued but before it was heard in the Superior Court, Sahar moved to dismiss the 1985 writ proceeding with prejudice. By this time the neighbors were aware of the 1985 proceeding, and they moved to intervene. On October 14, 1988, the Superior Court denied the motion to intervene and granted the motion to dismiss. The neighbors then filed a second notice of appeal to this court. However, on December 15, 1988, they, Sahar and the Board stipulated that the second notice of appeal should be dismissed with prejudice. On December 29, 1988, this court issued its mandate to that effect.

---

[5] All parties acknowledge that the Board could not have approved the proposed plat under the zoning ordinance that took effect on December 28, 1984. The new ordinance called for a minimum lot size of 1 acre. The plat proposed to divide 60 acres into 100 lots.

The appeal now before us arises from the neighbors' first notice of appeal. Thus, we are reviewing the 1988 writ proceeding as opposed to the 1985 one. The 1985 writ proceeding was terminated by the stipulation and mandate entered by this court in December 1988, and it is presently material only to the extent that it affects the 1988 writ proceeding.

■ ■ Within the 1988 writ proceeding, we review the Board's 1988 decision, as opposed to the Superior Court's judgment affirming that decision. *Grader v. Lynnwood*, 45 Wn. App. 876, 880, 728 P.2d 1057 (1986). In other words, we review de novo. *Anderson v. Island Cy.*, 81 Wn.2d 312, 316, 501 P.2d 594 (1972); *Bay Indus., Inc. v. Jefferson Cy.*, 33 Wn. App. 239, 241, 653 P.2d 1355 (1982). On issues of fact, we determine whether the Board's findings were supported by substantial evidence, RCW 7.16.120(4), (5) (standard for superior court review); *Bay Indus., Inc.*, 33 Wn. App. at 241 (this court conducts same review); *Andrew v. King Cy.*, 21 Wn. App. 566, 575, 586 P.2d 509 (1978), *review denied*, 91 Wn.2d 1023 (1979), the cognizable evidence being that contained in the record made before the Board. *Grader v. Lynnwood*, 45 Wn. App. at 879; *see Clark v. Horse Racing Comm'n*, 106 Wn.2d 84, 88, 720 P.2d 831 (1986) (Administrative Procedure Act case). On issues of law, we determine whether the Board acted contrary to law. RCW 7.16.120(3) (standard for superior court review); *Bay Indus., Inc.*, 33 Wn. App. at 241 (this court conducts same review); *see Clark v. Horse Racing Comm'n*, 106 Wn.2d 84, 88, 720 P.2d 831 (1986) (Administrative Procedure Act case).

The Board was reopening and reconsidering its 1985 decision when it made its 1988 one. This was acknowledged orally by the presiding commissioner and also in the Board's minutes.[6] Moreover, logic compels the same result. In both

---

[6]The presiding commissioner's remarks are set forth in the text, *supra*. The Board's minutes state: "CLG [the presiding commissioner] explained that this is a public hearing. July 16, 1985 this same issue was before the Board. It was denied on a split vote and that decision was appealed to the Superior Court. The Judge remanded this issue back to the Board for reconsideration with no special instructions."

1985 and 1988, the Board applied zoning laws last in effect on December 27, 1984. Sahar only submitted one plat application on or before that date. Necessarily, then, both of the Board's decisions related to that application, and the Board had to reopen and reconsider its first decision before it could render a second, contrary one.

Citing *State ex rel. Worsham v. Brown*, 126 Wash. 175, 218 P. 9 (1923), the neighbors argue that the Board lacked power to reopen and reconsider its 1985 decision in 1988. However, the appellant in *Worsham* was objecting to reconsideration of a previous final quasi-judicial decision, or in legal terms, to reconsideration of a previous res judicata decision.[7] Thus, we cannot determine *Worsham*'s effect on this case without first determining whether the Board's 1985 decision was res judicata at the time of the 1988 Board hearing.

The following discussion, then, addresses two questions. (1) At the 1988 Board hearing, was the Board's 1985 decision res judicata as to the neighbors? (2) At the 1988 Board hearing, did the Board have power to reconsider and reverse a res judicata decision made in 1985?

I

██ ██ Res judicata, modernly called claim preclusion, Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 Wash. L. Rev. 805 (1984-1985), applies

---

[7] In *Worsham*, a Seattle police detective was discharged for cause by the police chief. He appealed to the Seattle Civil Service Commission. The commission conducted a quasi-judicial hearing with live witnesses testifying under oath, and on May 23, 1922, ruled that it would sustain the position of the police chief. Within the next several months, one of the commission members was replaced, and the detective filed for a new hearing. On December 23, 1922, after another quasi-judicial hearing with live witnesses, the commission set aside its previous order and ruled that it would sustain the position of the detective. The matter wound its way to the Supreme Court, and that court framed the question as follows:

The sole question here to be determined is whether the civil service commission had the power, *after entering a final order* dismissing the appellant from the [police] service, to . . . set aside its prior order.

(Italics ours.) *Worsham*, at 176. The court ultimately ruled that the commission lacked power.

265

to quasi-judicial decisions by administrative tribunals as well as to judicial decisions by courts. *State v. Dupard*, 93 Wn.2d 268, 274, 609 P.2d 961 (1980); *Miller v. St. Regis Paper Co.*, 60 Wn.2d 484, 485, 374 P.2d 675 (1962); *see McCarthy v. Department of Social & Health Servs.*, 110 Wn.2d 812, 823, 759 P.2d 351 (1988) (collateral estoppel); *Malland v. Department of Retirement Sys.*, 103 Wn.2d 484, 490, 694 P.2d 16 (1985) (same). The Board's 1985 decision was quasi judicial because it denied a proposed plat, and an administrative decision denying a proposed plat is quasi judicial. *Miller v. Port Angeles*, 38 Wn. App. 904, 908, 691 P.2d 229 (1984), *review denied*, 103 Wn.2d 1024 (1985); *Lechelt v. Seattle*, 32 Wn. App. 831, 835, 650 P.2d 240 (1982), *review denied*, 99 Wn.2d 1005 (1983); *see* RCW 58.17.100 (findings of fact required); RCW 58.17.180 (review is by writ of review). Therefore, the Board's 1985 decision was subject to res judicata at such time as it became final. *Columbia Rentals, Inc. v. State*, 89 Wn.2d 819, 821, 576 P.2d 62 (1978) (final judgment is res judicata); *Pinkney v. Ayers*, 77 Wn.2d 795, 796, 466 P.2d 853 (1970) (interlocutory order is not res judicata).

▪ No later than August 1985, the Board's 1985 decision became final as to all proceedings except the 1985 writ proceeding. "[A]n appeal does not suspend or negate the res judicata aspects of a judgment entered after trial in the superior courts", (italics omitted). *Riblet v. Ideal Cement Co.*, 57 Wn.2d 619, 621, 358 P.2d 975 (1961); *Seattle Nat'l Co. v. Gilmore*, 167 Wash. 102, 110-11, 9 P.2d 95 (1932); *Kaufman v. Klain*, 69 Wash. 113, 115, 124 P. 391 (1912); Trautman, *supra* at 824; *see also* Restatement (Second) of Judgments § 13, comment *f*, at 135; 1B J. Moore, *Federal Practice* ¶ 0.416[3] (2d ed. 1983); Annot., *Judgment as Res Judicata Pending Appeal or Motion for a New Trial, or During the Time Allowed Therefor*, 9 A.L.R.2d 984 (1950), and the same is true of a noninterlocutory order entered after a quasi-judicial administrative fact-finding hearing. *Spokane & I.E.R.R. v. Spokane Cy.*, 75 Wash. 72, 81-82, 134 P. 688 (1913), *appeal dismissed*, 238 U.S. 642 (1915). In

short, a judgment or noninterlocutory administrative order becomes final for res judicata purposes at the beginning, not the end, of the appellate process, although res judicata can still be defeated by later rulings on appeal.

■ The policy underlying these rules is that res judicata should afford every party one but not more than one fair adjudication of his or her claim. A party who lost at trial should not be precluded from appealing, because if prejudicial error is found on appeal, the resultant rehearing will constitute the *first* fair adjudication of that party's claim. But absent agreement of all parties, a party who lost at trial should be precluded (1) from starting a new action at the trial level while an appeal is pending, in the hope that a contrary result can be obtained in the new action before the appeal is finished; and the same party should also be precluded from asking that the trial level tribunal in the original action reopen and change its judgment while an appeal is pending, *see* RAP 7.2(a), except when the tribunal is otherwise authorized to do so and certain other conditions are met. *See* RAP 7.2(e). To allow either of the last two maneuvers would be to sanction a second adjudication even though a first, presumptively correct one has already been made. *Mattice v. Dunden,* 193 Wash. 447, 450, 75 P.2d 1014 (1938) (decision presumed correct); *Greene v. National Sur. Co.,* 140 Wash. 230, 232, 248 P. 803 (1926) (same).

In this case, we have no occasion to consider whether the Board's 1985 decision became final when it was entered, when Sahar filed the notice of appeal that commenced the 1985 writ proceeding, or when the 30-day period for filing the notice of appeal expired. *See* RCW 58.17.180. All of those events occurred in approximately August 1985, and it is enough to observe that the Board's 1985 decision became final at that time, subject to rulings later made in the 1985 writ proceeding.

■ ■ Once the Board's 1985 decision was final, the neighbors had standing to assert that it barred further proceedings on the same plat application, other than the 1985 writ proceeding and any appeal that might be taken

therefrom. A party is entitled to claim the benefits of res judicata with respect to determinations made while he or she was a party, subject to exceptions not pertinent here. Restatement (Second) of Judgments § 34(2) (1982); *Nagle v. Lee*, 807 F.2d 435, 440 (5th Cir. 1987). A party is one who appears and participates in the proceeding, Restatement (Second) of Judgments § 34, comment *a*, at 348 (1982), or one "whose interests are properly placed before the court". 1B J. Moore ¶ 0.411[1], at 390. Here, the neighbors were entitled to notice pursuant to RCW 58.17.090, they were given notice, they appeared, and they actively contested approval of the plat. Had they lost at the 1985 Board hearing, they would have been treated as parties — they were required to appeal within 30 days, RCW 58.17.180, and upon failure to timely appeal, they would have been bound by the rules of res judicata. *See South Hollywood Hills Citizens Ass'n v. King Cy.*, 101 Wn.2d 68, 77, 677 P.2d 114 (1984) (neighbors' appeal dismissed for failure to timely join landowner, thereby binding them to administrative decision below); *North St. Ass'n v. Olympia*, 96 Wn.2d 359, 367-69, 635 P.2d 721 (1981), *disapproved on other grounds in Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 331-32, 815 P.2d 781 (1991) (same). Having won — they persuaded the Board to disapprove the plat — they were no less entitled to be treated as parties, and as parties they could claim res judicata.

The neighbors' right to assert res judicata was not affected by the April 19, 1988, stipulation between Sahar and the Board. The rights of a party are not affected by a stipulation to which he or she does not agree, *McDaniels v. Carlson*, 108 Wn.2d 299, 305, 738 P.2d 254 (1987); *Jacobsen v. State*, 89 Wn.2d 104, 109, 569 P.2d 1152 (1977); *Port of Seattle v. Yesler Estate*, 83 Wash. 166, 173, 145 P. 209 (1915), and the neighbors did not agree to the April 19 stipulation.

Similarly, the neighbors' right to assert res judicata was not affected by the April 20, 1988, agreed order entered by the Superior Court in the 1985 writ

proceeding. A person generally is not bound by orders entered in a proceeding to which he or she is not a party, *McDaniels v. Carlson*, 108 Wn.2d at 305; *Williams v. Poulsbo Rural Tel. Ass'n*, 87 Wn.2d 636, 644, 555 P.2d 1173 (1976), *overruled in part on other grounds in Chemical Bank v. WPPSS*, 102 Wn.2d 874, 691 P.2d 524 (1984), *cert. denied*, 471 U.S. 1065, 1075 (1985); *O'Brien v. Schultz*, 45 Wn.2d 769, 782, 278 P.2d 322 (1954), *overruled on other grounds in Chaplin v. Sanders*, 100 Wn.2d 853, 676 P.2d 431 (1984), and the neighbors were never made parties to the 1985 writ proceeding.[8] Moreover, except for orders properly presented ex parte, a person is not bound by orders presented without notice, even if he or she is a party, *see Sheldon v. Sheldon*, 47 Wn.2d 699, 702, 289 P.2d 335 (1955) (default judgment entered without notice); *Morley v. Morley*, 131 Wash. 540, 543-45, 230 P. 645 (1924) (probate order entered without notice), and the neighbors were not notified of the presentation of the April 20, 1988, agreed order.

At the time of the 1988 Board hearing, the neighbors retained the right to claim res judicata. Nonetheless, that right could still be defeated by rulings of the Superior Court in the 1985 writ proceeding. Sahar, however, elected not to

---

[8]By making this statement, we do not mean to imply that every neighbor must individually be made a party in order to be bound to the result of a writ proceeding. Because no neighbors were joined in this case, we have no occasion to consider whether neighbors, if they are numerous, can be treated as a group or class.

Parenthetically, we note that if one or more neighbors in this case had been made parties to the 1985 writ proceeding, they would have been entitled to notice of presentation of the Sahar/County agreed order. CR 5(a), CR 6(d). From the fact that they appeared and objected at most if not all previous and subsequent hearings, it may be presumed that they would have responded to such notice by appearing and objecting, and that their objection would have been the same as the one later made to the Board — *i.e.*, that the Board could not reopen and reconsider because its 1985 decision was final. Absent a finding of prejudicial error, the Superior Court would have been obligated to accede to that objection, just as this court must accede to it now. The effect would have been to preclude the order of remand and limit Sahar to prosecuting the 1985 writ proceeding on its merits. And that is precisely the result intended by Washington's rules of preclusion pending appeal.

pursue that proceeding in such a way as to affect the neighbors' right. Instead, he opted to ask the Board to reopen and reconsider its 1985 decision, notwithstanding the neighbors' right. That course of action could succeed only if the Board possessed power to reopen and reconsider its own res judicata decision made some 3 years earlier, and thus we move to our second question.

## II

A trial level tribunal is not always required to honor a valid claim of res judicata. *See, e.g.,* CR 60 (authorizing superior courts to reopen and reconsider res judicata decisions under specified circumstances). Conversely, a trial level tribunal does not necessarily have power to reopen and reconsider a prior res judicata decision simply because it had the power to make the decision in the first instance. *E.g., State ex rel. Worsham v. Brown,* 126 Wash. at 176-77 (Seattle Civil Service Commission lacked power to reconsider, despite having power to decide in first instance); *State ex rel. Hearty v. Mullin,* 198 Wash. 99, 87 P.2d 280 (1939) (same). Thus, the question raised by the neighbors is whether the Clallam County Board of Commissioners had power to reopen and reconsider its 1985 decision in 1988, notwithstanding the res judicata character of that decision.

Only quasi-judicial power is material to the inquiry. Traditionally, the concept of separation of powers divided governmental power into that which is legislative, executive and judicial. U.S. Const. arts. 1-3; Const. arts. 2-4. Since the early days of administrative practice, however, that concept has been supplemented by the idea that administrative agencies can constitutionally exercise quasi-judicial power. *Asarco, Inc. v. Air Quality Coalition,* 92 Wn.2d 685, 696, 601 P.2d 501 (1979). In both 1985 and 1988, the Board was an administrative agency deciding whether to approve or disapprove a plat, and as noted already, that type of decision is quasi judicial. *Miller v. Port Angeles, supra*; *Lechelt v. Seattle, supra.* In both 1985 and 1988, then, the

Board needed quasi-judicial power, and whatever legislative or executive power it had is of no significance.[9]

 Like legislative power, *see McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421, 4 L. Ed. 579, 605 (1819), quasi-judicial power can be granted expressly or impliedly, or it can be inherent. Inherent and impliedly granted power are in issue here.[10]

The Board lacked inherent power to reconsider its own res judicata decisions. Administrative tribunals are creatures of the legislative body that creates them, *Jaramillo v. Morris*, 50 Wn. App. 822, 829, 750 P.2d 1301, *review denied*, 110 Wn.2d 1040 (1988); *State v. Munson*, 23 Wn. App. 522, 524, 597 P.2d 440 (1979); *Chaussee v. Snohomish Cy. Coun.*, 38 Wn. App. 630, 636, 689 P.2d 1084 (1984), and their power is limited to that which the creating body grants. *State ex rel.*

---

[9]Sahar argues that the Board had inherent power to reconsider because it was the Board of a home rule county and such counties have all power not denied by federal or state law. The argument fails because it does not distinguish between inherent legislative and executive power on the one hand and inherent quasi-judicial power on the other. We assume that Clallam County is a home rule county, Clallam County Charter §§ 2.30.10-.20, and that its Board has inherent legislative and executive power, *i.e.*, all legislative and executive power not denied by federal or state law. Const. art. 11, § 4; *King Cy. Coun. v. Public Disclosure Comm'n*, 93 Wn.2d 559, 562-63, 611 P.2d 1227 (1980). Those assumptions, however, are immaterial. As stated in the text, the Board needed quasi-judicial power, as opposed to legislative or executive power.

This same reasoning discloses that Sahar's reliance on *Cowlitz Cy. v. Johnson*, 2 Wn.2d 497, 98 P.2d 644 (1940), 4 E. McQuillin, *Municipal Corporations* § 13.48 (3d rev. ed. 1985), and 56 Am. Jur. 2d *Municipal Corporations* § 352 (1971), is misplaced. All three authorities deal with legislative rather than quasi-judicial power. (Additionally, in *Johnson* a statute expressly authorized the county board to "review, change and modify" its prior decision.)

[10]An express grant must emanate from a body with legislative power, *State v. Pierce*, 11 Wn. App. 577, 580, 523 P.2d 1201 (1974) (state agency's powers must come from Legislature); *Cole v. State Utils. & Transp. Comm'n*, 79 Wn.2d 302, 306, 485 P.2d 71 (1971) (same), and here there was no statute or ordinance authorizing reconsideration. We observe parenthetically that the Board in its capacity as the legislative body for a home rule county may have had inherent legislative power to enact an ordinance granting to itself, in its capacity as a quasi-judicial hearing tribunal, quasi-judicial power to reconsider and alter previous decisions (*see Bartz v. Board of Adj.*, 80 Wn.2d 209, 214, 492 P.2d 1374 (1972)); but assuming that it had such power, it had not exercised it at the times relevant here.

*PUD 1 v. Department of Pub. Serv.*, 21 Wn.2d 201, 208-09, 150 P.2d 709 (1944). They cannot possess inherent power, because by definition such power is power not granted yet still possessed. Black's Law Dictionary 782, 1170 (6th ed. 1990). Thus, quasi-judicial power cannot be inherent, *Human Rights Comm'n v. Cheney Sch. Dist. 30*, 97 Wn.2d 118, 125, 641 P.2d 163 (1982) (quoting *State v. Munson*, *supra*; *Jaramillo v. Morris*, *supra*; *Chaussee v. Snohomish Cy. Coun.*, *supra*), and administrative tribunals lack inherent power to reconsider their own final decisions.[11] *State ex rel. Worsham v. Brown*, 126 Wash. at 176-77; *State ex rel. Hearty v. Mullin*, 198 Wash. 99, 87 P.2d 280 (1939). *See generally* Annot., *Power of Administrative Agency To Reopen and Reconsider Final Decision as Affected by Lack of Specific Statutory Authority*, 73 A.L.R.2d 939 (1960).

 In 1985, the Board may have possessed impliedly granted power to reconsider,[12] but in 1988 it lacked such

---

[11]An exception may be fraud "or something of like nature". *Abraham v. Department of Labor & Indus.*, 178 Wash. 160, 163, 34 P.2d 457 (1934); *Knestis v. Unemployment Comp. & Placement Div.*, 16 Wn.2d 577, 583, 134 P.2d 76 (1943).

[12]Implied quasi-judicial power to reconsider may have been recognized in *Hall v. Seattle*, 24 Wn. App. 357, 362, 602 P.2d 366 (1979). There, the court said:
[I]t will ill serve the public interest to deny an agency the right to correct its own obvious mistakes when that can be done promptly and fairly. Other courts, which have held to the same effect as the State Supreme Court has in *Worsham* and *Hearty*, have recognized that in such limited circumstances, there is an exception to the general rule that an agency does not have the authority to reopen and reconsider a final decision in the absence of a specific statute, charter or ordinance authorizing it.
*Hall*, however, labels the power it discusses as "inherent" power, 24 Wn. App. at 361, and terms it "an exception to the general rule" adopted in *Worsham* and *Hearty*. 24 Wn. App. at 362. If *Hall* is really discussing inherent power, its result is contrary to the well-established principle that administrative agencies lack inherent quasi-judicial power. On the other hand, if *Hall* is viewed as a case that implies a grant of power to reconsider from the particular statute that empowered the agency to make the decision in the first instance, it is consistent with *Worsham*, *Hearty*, and other Washington cases that suggest the existence of implied power to reconsider in certain limited circumstances. *Wiles v. Department of Labor & Indus.*, 34 Wn.2d 714, 720, 209 P.2d 462 (1949) (right to order further investigation and testimony); *Abraham v. Department of Labor & Indus.*, 178 Wash. 160, 163, 34 P.2d 457 (1934) (suggesting fraud may be a ground justifying reconsideration in the absence of statute or ordinance); *Knestis v.*

power. An express grant of quasi-judicial power must be accompanied by reasonable standards that define in general terms what is to be done and the administrative body that is to do it, *Rody v. Hollis*, 81 Wn.2d 88, 91, 500 P.2d 97 (1972), and it follows that an implied grant of power must also be accompanied by such standards, albeit implied ones. An essential standard is that reconsideration occur within a reasonable time, for without such a standard decisions based on impliedly granted quasi-judicial power would never be final or certain. As a matter of law, reconsideration after nearly 3 years is not reconsideration within a reasonable time. Consequently, the Board lacked impliedly granted power when it reconsidered its 1985 decision in 1988, whether or not it had implied power to reconsider for a reasonable time in 1985.

If the 1985 writ proceeding were still pending, this court's mandate should be fashioned so that Sahar could prosecute it to conclusion on its merits.[13] However, when the 1985 writ proceeding was dismissed in December 1988, the Board's

---

*Unemployment Comp. & Placement Div.*, 16 Wn.2d 577, 583, 134 P.2d 76 (1943) (same). Given general principles, it is not surprising that the Minnesota case relied on by *Hall* seems to have spoken of power implied from a statute as opposed to power inhering in an agency regardless of statute.

> As we view the [legislative] act, it should be construed so as to give effect to the objects which the legislature sought to accomplish . . . .. It is generally recognized that one of the powers proper to an efficient and just administration of the right to adjudicate is the power to reverse adjudications which appear to be erroneous (Federal Rules of Civil Procedure, Rule 60[b]).

*Anchor Cas. Co. v. Bongards Co-Operative Creamery Ass'n*, 253 Minn. 101, 106, 91 N.W.2d 122, 126, 73 A.L.R.2d 933 (1958).

[13]A mandate of this sort would precisely implement the policy that every person is entitled to one but not more than one fair adjudication. To remand to the Superior Court for resolution on the merits of the 1985 writ proceeding would be to remand so that that court could determine whether there was prejudicial error by the Board when it made its 1985 decision; and to determine whether there was prejudicial error by the Board when it made its 1985 decision would be to determine whether Sahar ever received one fair adjudication by the Board. If the Board prejudicially erred in 1985, he did not; if the Board did not prejudicially err in 1985, he did. If he did not receive a fair adjudication, he should have the right to a remand for further proceedings constituting his *first* fair adjudication. If he did, he should have no right to remand, for he would already have had one fair adjudication.

1985 decision became unconditionally final. Presently, then, this court should mandate reinstatement of that decision.

The Superior Court's judgment is reversed. The Board's 1988 decision is vacated, and the Board's 1985 decision is reinstated.

PETRICH, C.J., and ALEXANDER, J., concur.

Review denied at 119 Wn.2d 1005 (1992).