IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | |
| | ) | No. 37237-5-III |
| DAMIEN ARTHUR WILSON, | ) | |
| | ) | |
| Petitioner. | ) | PUBLISHED OPINION |
| | ) | |

SIDDOWAY, A.C.J. — It is settled Washington law that if an inmate files a personal restraint petition (PRP) challenging the finding of an infraction and identifies a procedural error that might entitle him to a new hearing, the Department of Corrections (DOC) need not await the outcome of the PRP; it may offer the alternative remedy of expunging the infraction and providing a new hearing free of the procedural error.

At issue in this appeal is whether DOC may also rehear a disciplinary matter whose outcome was favorable to Mr. Wilson because it believes the first hearing officer got it wrong. We hold that collateral estoppel applies and that DOC improperly reheard the infraction.

We grant Mr. Wilson's PRP and remand with directions to reinstate two drug

offender sentencing alternative (DOSA) sentences whose revocation he challenges.

FACTS AND PROCEDURAL BACKGROUND

In June 2018, Mr. Wilson was convicted of multiple crimes, for which he was

convicted under two 2017 causes.[1] The court imposed DOSA sentences that were to be

served concurrently to each other and consecutively to any other sentence.[2]

The prior November, Mr. Wilson had pleaded guilty to violating conditions of

community custody imposed in his sentence for a 2006 robbery conviction.[3] He was

returned to DOC to serve the remainder of the robbery sentence, a status that DOC refers

to as "CCP" (Community Custody Prison).[4] His DOSA sentences imposed in 2018

would be served consecutive to the remainder of his 2006 sentence.

In July 2018, Mr. Wilson signed a prison drug offender sentencing alternative

agreement and agreed to follow the rules set forth in a substance use disorder treatment

---

[1] Response of DOC (Resp.), Ex. 1, attachments (att.) B, C.

Our record in this matter consists of Mr. Wilson's PRP, a response that this court requested from DOC (Resp.), Mr. Wilson's reply (Reply), a reply brief filed by counsel for Mr. Wilson after our Acting Chief Judge referred the PRP to a panel and granted Mr. Wilson's motion to appoint counsel (Reply Br.), and DOC's supplemental response brief (Suppl. Resp.).

[2] Resp., Ex. 1, att. B at 3, att. C at 3.

[3] Resp., Ex. 1, att. D at 2.

[4] Resp., Ex. 1, att. D at 1-2.

participation requirements document.[5] No start date for treatment was identified. That

section of the requirements document had a marginal notation, "To be determined."[6] Mr.

Wilson claims he was informed by DOC personnel that he would not have to participate

in prison-based substance use disorder treatment until he began serving his DOSA

sentences. They told him it was currently uncertain the order in which he would serve his

sentences.[7]

In September 2018, Mr. Wilson's counselor provided him with DOC-generated

start date and earned release date information that indicated he began serving the

remainder of his 2006 sentence in October 2017, and would begin serving his DOSA

sentence in June 2020, once the 2006 sentence was completed.[8]

On January 22, 2019, Mr. Wilson was admitted to a prison-based substance abuse

disorder program, apparently as the result of a January 1, 2019 revision to DOC policy

580.655.[9] The cover sheet to the revision characterized it as including "[m]ajor

---

[5] Resp., Ex. 3, att. A at 16-17, 19-20.

[6] Resp., Ex. 3, att. A at 16; Reply, Ex. 1, at 3.

[7] Reply, Ex. 1, at 3.

[8] PRP, Ex. B at 1; Reply, Ex. 1, at 3-4.

[9] Resp., Ex. 3, att. A at 9; Suppl. Resp., Ex. 2, at 2.

changes."[10]  It included the admonition, "Read carefully!"[11]  For the first time, the policy

provided:

> I.      The Department has established procedures for the Drug Offender
> Sentencing Alternative (DOSA) program for offenders sentenced to
> DOSA per RCW 9.94A.660 to include the recommended level of
> care for Substance Use Disorder (SUD) treatment within available
> resources.
>
> II.     <u>An offender is considered an active participant in the DOSA
> program:</u>
>> A.     During total/partial confinement while serving the DOSA
>> sentence <u>or when a past or future DOSA sentence is served
>> during the confinement period</u>, and
>>
>> B.     While in the community during the time the DOSA
>> community custody cause is being served.

Suppl. Resp., Ex. 2, at 2 (emphasis added).  Mr. Wilson's first documented

participation in the program was on January 25, 2019, when prison records

indicate he participated in "Community Member Handbook review, pages 77-

93."[12]

The day before that handbook review, on January 24, an envelope containing

Suboxone strips was recovered from the prison mailroom.[13]  The envelope was addressed

---

[10] Suppl. Resp., Ex. 2, at 1.

[11] *Id*.

[12] Resp., Ex. 3, att. A at 29.

[13] *Id*. at 43.

to an offender named Terry Eastman.[14]  A confidential informant reported that Mr. Wilson was involved in the attempted delivery, which was corroborated by recorded phone calls between Mr. Wilson and his mother.[15]

On February 12, DOC informed Mr. Wilson he was required to sign a new version of DOC's "Prison Drug Offender Sentencing Alternative Agreement," with revision date January 1, 2019.  Unlike the agreement he had signed in 2018, this agreement said, "I acknowledge that the Drug Offender Sentencing Alternative (DOSA) program is the total sentence, from the date of sentencing to the completion/closure of community supervision, including the recommended level of care for substance use disorder treatment.  I am considered an active participant in the DOSA program . . . [d]uring total/partial confinement while serving the DOSA sentence or when a past or future DOSA sentence is served during that confinement period."[16]  The agreement implied, and Mr. Wilson claims he was told, that if he refused to sign his DOSA sentences would be revoked (even though he was not currently serving them) and he would be sanctioned for "refusing to program."[17]  He signed the forms to avoid the threatened sanctions.[18]

---

[14] *Id.*

[15] *Id.*

[16] *Id.* at 18; Reply, Ex. 1, at 3-4.

[17] Reply, Ex. 1, at 4-5.

[18] *Id.*

On March 21, 2019, Mr. Wilson admitted his involvement in delivery of the Suboxone to Mr. Eastman in January.[19]  He was charged the next day with a serious infraction, infraction 603, for introducing or transferring any unauthorized drug or drug paraphernalia, in violation of WAC 137-25-030(1) (Category A, 603).[20]  On March 31, 2019, he was found guilty and mandatory sanctions were imposed.[21]  They included the loss of fee-based recreation days, good conduct time, store privileges, denial of attendance at special events, urinalysis/breath alcohol testing, removal from waiting lists for work/other program assignments and loss of housing assignment.[22]

On April 2, 2019, Mr. Wilson was terminated from the substance use disorder treatment program.[23]  This led to notice of a DOSA reclassification hearing to be conducted on July 1, 2019, for a different serious infraction: "Noncompliance with the DOSA program," a violation of WAC 137-25-030(1) (Category B, Level 3, [infraction] 762).[24]

The hearing and appeal policy in effect at the time of the July 1 hearing required hearing officers to verify the cause(s) under which allegations were made and whether

---

[19] Resp., Ex. 3, att. A at 43.

[20] Resp., Ex. 3, att. A at 43-44.

[21] Reply Br., App. A.

[22] Resp., Ex. 3, att. A at 55.

[23] Resp., Ex. 3, att. A at 9-10.

[24] *See* Reply Br., App. B.

they were active and, on that basis, to determine if DOC had jurisdiction.[25]  At the

hearing on July 1, Hearing Officer Brian Clement found that Mr. Wilson's offender status

was "CCP," not "DOSA."[26]  He concluded DOC lacked jurisdiction to prosecute the 762

infraction because Mr. Wilson was "[s]till on Non-DOSA C Cause."[27]  He dismissed the

alleged infraction.[28]

On July 17, 2019, Mr. Wilson was served with notice that a second 762 violation

hearing based on the same allegation would be held on July 22, 2019.[29]  According to Mr.

Wilson, a hearing was held on July 22 with Hearing Office Clement presiding.[30]  Hearing

Officer Clement questioned why the alleged infraction was being reheard when he had

previously dismissed it, and continued the hearing in order to find out what was going

on.[31]  DOC records indicate that the same day, Hearing Officer Clement recused himself

from the matter, having previously dismissed it "due to lack of jurisdiction."[32]

On August 19, 2019, the second 762 violation hearing was held before Hearing

Officer Joanna Prideaux.  Relying on the same evidence earlier presented to Hearing

---

[25] Suppl. Resp., Ex. 4 at 3-4.

[26] PRP, Ex. A at 1.

[27] Suppl. Resp., Ex. 4 at 3-4; PRP, Ex. A at 1-2.

[28] *Id.*

[29] Resp., Ex. 3, att. A at 3-5.

[30] PRP, Attached pp. (preceding exhibits) at 2.

[31] *Id.*

[32] Resp., Ex. 2, att. C.

Officer Clement,[33] Hearing Officer Prideaux found Wilson guilty and revoked his DOSA

sentences. In doing so, Prideaux characterized Mr. Wilson's "Offender Status" as both

"CCP" and "DOSA," and found that jurisdiction was "[c]onfirmed."[34]

On August 25, 2019, six days after Hearing Officer Prideaux's decision to

terminate his DOSA sentences, Mr. Wilson placed his written appeal of her decision in

the prison inmate mail system.[35] The appeal was not mailed to the appeals panel until

August 27, 2019, however.[36] On October 4, 2019, Mr. Wilson was notified by the DOSA

revocation hearing supervisor that his appeal had been rejected as untimely because it

was postmarked eight days after the decision, one day past the seven-day deadline. The

hearing supervisor rejected Mr. Wilson's argument that his appeal was timely submitted

under the "[f]ederal and [s]tate mailbox rule."[37]

Mr. Wilson then filed this PRP raising, as grounds for relief, that (1) DOC lacked

the authority to re-serve and rehear an infraction that was previously dismissed, (2) DOC

lacked personal and subject matter jurisdiction of the DOSA cause numbers and did not

have statutory authority find a violation of DOSA sentences that had not yet begun,

(3) there was insufficient evidence Mr. Wilson violated a DOSA sentence while serving a

---

[33] *Compare* Reply Br., App. B, *with* Resp., Ex. 3, att. A at 3-5.

[34] Resp., Ex. 3, att. A at 1.

[35] PRP, Attached pp. (preceding exhibits) at 7-8.

[36] *Id*. at 11.

[37] PRP, Ex. D at 4.

DOSA sentence, and (4) DOC erred when it rejected Mr. Wilson's appeal in violation of the mailbox rule.

We requested a response from DOC. In its response, DOC conceded it had wrongly failed to process Mr. Wilson's administrative appeal and would now do so, rendering that ground for relief moot. [38] (Its appeal unit affirmed the DOSA revocation decision.[39]) It contests Mr. Wilson's remaining requests for relief.

Our Acting Chief Judge determined that Mr. Wilson's petition was not frivolous, referred it to a panel, and appointed counsel for Mr. Wilson. Supplemental briefing was received from Mr. Wilson and DOC.

ANALYSIS

The Drug Offender Sentencing Alternative

The Washington Legislature enacted the DOSA statute as a "treatment-oriented" alternative to a standard range sentence of confinement. *In re Pers. Restraint of Schley*, 191 Wn.2d 278, 280, 421 P.3d 951 (2018) (plurality opinion) (citing LAWS OF 1995, ch. 108 pmbl.). If a trial court finds that the sentencing alternative is appropriate for an individual, half of the sentence is suspended and the person is provided with substance abuse treatment, within available resources. *Id.* (citing former RCW 9.94A.660(3), .662(2) (2018)). The DOSA statute provides that if a DOSA recipient fails to complete

---

[38] Resp. at 6-7.
[39] Reply at 4-5, Ex. 1, at 6.

the treatment program or is administratively terminated from the program, then DOC

shall revoke the DOSA. *Id.* at 281 (citing former RCW 9.94A.662(3)). If the DOSA is

revoked, then the term of community custody is struck and the offender will serve the

remainder of his or her sentence in prison. *Id.*

Standard of Review

To obtain relief through a PRP, a petitioner must generally "establish that a

constitutional error has resulted in actual and substantial prejudice, or that a

nonconstitutional error has resulted in a fundamental defect which inherently results in a

complete miscarriage of justice." *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 298,

88 P.3d 390 (2004). However, if a petitioner has not had an opportunity for prior judicial

review, then the heightened threshold requirements applicable to PRPs do not apply, and

he need demonstrate only that he is restrained under RAP 16.4(b) and that the restraint is

unlawful under RAP 16.4(c). *Id.* at 299. A personal restraint petitioner is under

"restraint" if he is confined. RAP 16.4(b). Mr. Wilson need only show that he is under

an unlawful restraint.

Prisoners facing discipline are not entitled to the full panoply of constitutional

protections afforded defendants facing criminal charges. *In re Pers. Restraint of

Grantham*, 168 Wn.2d 204, 214-15, 227 P.3d 285 (2010). We will reverse a prison

discipline hearing upon a showing that it was so arbitrary and capricious as to deny the

petitioner a fundamentally fair proceeding. *Id.* at 215 (citing *In re Pers. Restraint of*

10

*Reismiller*, 101 Wn.2d 291, 294, 678 P.2d 323 (1984)). A showing that a decision by a government agency failed to comply with the agency's own rules or regulations is sufficient to show the unlawfulness of the restraint. *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 149, 866 P.2d 8 (1994); *In re Pers. Restraint of Pullman*, 167 Wn.2d 205, 218, 218 P.3d 913 (2009).

At a hearing to revoke a DOSA for administrative termination from the DOSA treatment program, due process requires that both the administrative termination and the facts that served as a basis for terminating treatment be proved by a preponderance of the evidence. *Schley*, 191 Wn.2d at 287, 290. This is a step up from the "'some evidence'" standard that is satisfied by "'any evidence in the record'" to support a guilty finding in a prison disciplinary proceeding. *Id.* at 287 (quoting *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985)).

Reviewing courts have three options in evaluating PRPs complaining of prison discipline: (1) dismiss the petition, (2) remand for a new hearing, or (3) vacate the infraction and reverse the sanction. *See In re Pers. Restraint of Hews*, 99 Wn.2d 80, 88, 660 P.2d 263 (1983).

I.   WE QUESTION BUT NEED NOT RESOLVE DOC'S POSITION THAT BY PROVIDING TREATMENT BEFORE A DOSA SENTENCE BEGINS TO RUN, IT ENLARGES THE PERIOD IN WHICH IT CAN REVOKE THE DOSA

Two issues raised by Mr. Wilson's PRP are interrelated. One is whether DOC has the authority to punish administrative termination from a treatment program it offers

11

before the start date of a DOSA sentence with revocation of the DOSA sentence. Another is whether, if Hearing Officer Clement's finding on Mr. Wilson's status was incorrect in DOC's view, it may submit the same infraction to other hearing officers until one of them decides it "correctly." We delve into the first issue enough to conclude that it was a viable issue that was presented to and resolved by Hearing Officer Clement, applying DOC policies.

As DOC points out, its secretary has been delegated authority for the administration of adult correctional programs. RCW 72.09.050. And RCW 72.09.130, which explicitly contemplates that DOC will make available education and work programs for inmates, requires DOC-operated state correctional facilities to adopt a system that uses an inmate's receipt or denial of earned early release days and other privileges to the inmate's behavior and participation in such programs. DOC's disciplinary code, chapter 137-28 WAC, was adopted under RCW 72.01.090, which authorizes DOC to make its own rules for the proper execution of its powers. DOC can make treatment programs available to prisoners who are not serving DOSA sentences and reward or sanction failures to participate consistent with those grants of authority. At issue here, though, is the revocation of a DOSA sentence. DOC must exercise delegated authority under the restraints of the statutes delegating the authority. *State v. Brown*, 142 Wn.2d 57, 62, 11 P.3d 818 (2000).

DOC's authority to revoke a DOSA sentence is provided by RCW 9.94A.662. After providing the terms of a DOSA sentence, including its reduced period of total confinement and appropriate substance abuse treatment during the community custody portion of the sentence, it provides:

> (2) During incarceration in the state facility, offenders sentenced under this section shall undergo a comprehensive substance abuse assessment and receive, within available resources, treatment services appropriate for the offender. The treatment services shall be designed by the division of alcohol and substance abuse of the department of social and health services, in cooperation with the department of corrections.
> (3) If the department finds that conditions of community custody have been willfully violated, the offender may be reclassified to serve the remaining balance of the original sentence. An offender who fails to complete the program or who is administratively terminated from the program shall be reclassified to serve the unexpired term of his or her sentence as ordered by the sentencing court.

Former RCW 9.94A.662 (2019). DOC's authority to revoke a court-ordered DOSA sentence is provided by the language of subsection (3) authorizing reclassification to serve the unexpired term of the inmate's sentence if the inmate "fails to complete *the program* or is administratively terminated from *the program*."

In responding to Mr. Wilson's PRP, DOC asks us to view the subsection (2) period of "incarceration in the state facility" as meaning the entire time an inmate with at least one DOSA sentence is consecutively confined, regardless of whether he is currently serving a DOSA sentence. Its disputed contention is that by providing services early, it

enlarges the period in which administratively terminating services can be relied on to revoke the offender's DOSA sentence.

This construction is contrary to DOC policies that Hearing Officer Clement was called on to apply in July 2019. The violations procedure of DOC's DOSA policy, DOC policy 580.655, as revised on January 1, 2019, provides in relevant part that DOSA offenders (as broadly defined by DOC) will be reclassified if they fail to enter into or are administratively terminated from treatment.[40] But it limits administrative termination from treatment to inmates who are serving a DOSA sentence, stating: "If the [chemical dependency professional]/supervisor believes *an offender serving the confinement portion of a DOSA sentence* in Prison has failed to complete [substance use disorder] treatment or should be administratively terminated . . ." the supervisor is to complete a discharge summary and have it reviewed.[41]

And the January 1, 2019 revision of DOC's hearings and appeals policy, DOC policy 460.140, includes, as a "Directive," that "[t]he Hearing Officer will determine if the Department has jurisdiction, based on the evidence provided by a CC/CCO/CCS and the hearing preparation sheet, to hold a hearing by *verifying the cause under which allegations are made is active*."[42] It continues, "If the Department does not have

---

[40] Suppl. Resp., Ex. 2, at 5.

[41] *Id*. (emphasis added).

[42] Suppl. Resp., Ex. 4, at 3 (emphasis added).

14

jurisdiction, the Hearing Officer will dismiss the allegation(s) and release the Department's hold.[43]

To decide this appeal, we need not resolve the parties' dispute over the meaning of RCW 9.94A.662(2) and (3). We need not address DOC's arguments that whatever the meaning of the statute, Mr. Wilson agreed to a DOSA revocation consequence by signing DOC form agreements in July 2018 and February 2019. Mr. Wilson's lead argument is that the issue of his active offender status was required to be decided by Hearing Officer Clement at the July 1, 2019 hearing, *was* decided by him, and DOC is bound by his decision.

## II.    HEARING OFFICER CLEMENT'S DECISION IS PRECLUSIVE

In his pro se PRP, Mr. Wilson contends that double jeopardy and due process prevented DOC from retrying the infraction because it disagreed with the outcome of the first hearing. His appointed counsel concedes that double jeopardy does not apply to prison disciplinary hearings, but argues that collateral estoppel does.

"Prison disciplinary hearings are not criminal prosecutions, and the full panoply of rights due a criminal defendant does not apply." *In re Pers. Restraint of Goulsby*, 120 Wn. App. 223, 229, 84 P.3d 922 (2004). The double jeopardy clause protects against multiple criminal punishments for the same offense, so it does not apply to prison

---

[43] Suppl. Resp., Ex. 4, at 4.

disciplinary proceedings. *Id.* Accordingly, prison officials may properly conduct a rehearing even if evidence was found to be insufficient in a first hearing. *Id.*

As for collateral estoppel, "[b]oth state and federal courts have applied collateral estoppel where an issue was adjudicated by an administrative agency in the earlier proceeding." *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 307, 96 P.3d 957 (2004) (citing cases).

> "Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution."

*Id.* at 308 (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107-08, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991)).

Res judicata principles apply to prison disciplinary hearings. *In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 399-400, 978 P.2d 1083 (1999). The policy underlying res judicata is that every party should be afforded one, but not more than one, fair adjudication of his or her claim. *Id.* at 400 (citing *LeJeune v. Clallam County*, 64 Wn. App. 257, 823 P.2d 1144 (1992)).

Generally, the party asserting issue preclusion must demonstrate that (1) the issue in the prior adjudication was identical to the issue currently presented for review, (2) the prior adjudication was a final judgment on the merits, (3) the party against whom the

16

doctrine is asserted was a party to or in privity with a party to the prior adjudication, and (4) barring relitigation of the issue will not work an injustice on the party against whom the doctrine is applied. *State v. Harrison*, 148 Wn.2d 550, 561, 61 P.3d 1104 (2003).

"Three additional factors must be considered under Washington law before collateral estoppel may be applied to agency findings: (1) whether the agency acted within its competence, (2) the differences between procedures in the administrative proceeding and court procedures, and (3) public policy considerations." *Christensen*, 152 Wn.2d at 308.

Here, the issues and parties are indisputably the same. The injustice factor is generally concerned with procedural regularity: whether the first forum presented an equally full and fair opportunity to litigate, and whether a disparity of relief reduced a party's reason for vigorously litigating an issue in the first proceeding. *Id.* at 309. Injustice is a nonissue when the first and second forum, and the relief available, were the same.

Hearing Officer Clement's decision is not exactly a final judgment on the merits, but that is typical for agency decisions. *Christensen*, 152 Wn.2d at 327 (Sanders, J., dissenting). It did, however, completely resolve the 762 infraction by making a factual finding of Mr. Wilson's offender status, which Clements then relied on, consistent with DOC policies, to find a lack of jurisdiction.

Turning to the factors specific to agencies, the hearing officer was competent to hear prison disciplinary matters and it was within his competence to determine Mr. Wilson's active offender status, in order to determine jurisdiction. *Christensen*, 152 Wn.2d at 319 (the relevant inquiry is "are its factual findings regarding the decision to discharge within its competence to determine?"). Here, too, there are no procedural concerns because a decision in a prison disciplinary proceeding is being applied in the same type of proceeding, not in court, or in some other, different, forum.

From a public policy standpoint, it does not contravene public policy to hold that DOC cannot retry infractions on the same record until it gets the outcome it wants. DOC argues it is unfair to characterize it as retrying the infraction to get the outcome it wants, pointing out that conducting a rehearing when a mistake has been made is something that *In re Pers. Restraint of Higgins*, 152 Wn.2d 155, 162, 95 P.3d 330 (2004), *Goulsby*, and cases on which they rely permit correctional systems to do.

*Higgins* held that when an inmate challenges a prison disciplinary hearing by filing a PRP, it does not prevent DOC from expunging the inmate's infraction and conducting a rehearing. 152 Wn.2d at 162-63. While the court has exclusive jurisdiction of the PRP, court rules do not prevent the DOC from providing an alternative remedy. *Id.* at 163. Indeed, RAP 16.4(d) provides that the court will only grant relief by a PRP "if other remedies which may be available to petitioner are inadequate under the circumstances." Here, however, DOC did not conduct the rehearing in order to give Mr.

18

Wilson an opportunity to obtain relief he had previously been denied. Mr. Wilson was content with the outcome of the first hearing.

The second hearing was conducted, instead, to get a different outcome for DOC. Because collateral estoppel applies, however, DOC is bound by the result of the first hearing.

The petition is granted and DOC is directed to reinstate Mr. Wilson's DOSA sentences.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Fearing, J.

19