110 P.3d 856 (2005)
In the Matter of the PERSONAL RESTRAINT PETITION OF Lorah L. McKAY, Petitioner.
No. 54212-5-I.
Court of Appeals of Washington, Division 1.
April 25, 2005.
Gregory Link, Washington Appellate Project, Seattle, WA, Lorah McKay, Steilacoom, WA, for Appellant.
Donna Mullen, Attorney General's Office, Olympia, WA, for Respondent.
ELLINGTON, A.C.J.
¶ 1 This personal restraint petition presents a single issue: the level of due process required in a custodial hearing for revocation of a drug offender sentencing alternative (DOSA). The State concedes that the liberty interest at stake in a DOSA revocation requires a preponderance standard of proof. We agree. We accept the State's concession, grant McKay's petition, and direct the Department of Corrections to employ a preponderance of the evidence standard on remand.

BACKGROUND
¶ 2 Lorah McKay pleaded guilty to crimes of identity theft and theft in King and Pierce counties. The court imposed a DOSA sentence[1] of 73 months, half to be served in *857 prison and half in the community, with a treatment requirement. After she had been in prison for seven months, she was transferred to Pine Lodge to begin in-patient drug treatment.
¶ 3 McKay had difficulties adjusting to the new setting. After approximately six weeks at Pine Lodge, she concocted a fake death threat in an apparent attempt to be transferred back to the Washington Women's Correction Center. For this offense, McKay was charged with an infraction under WAC 137-28-260 and -552 (causing an innocent person to be penalized or proceeded against by lying). McKay was also charged with failing to participate in chemical dependency treatment. McKay admitted the first violation, but denied the second. The Department of Corrections (DOC) argued McKay had failed to participate in treatment, alleging that she had failed to complete chores on time, had slept during program hours, had not completed work in a therapy class, had planned to forge a staff signature to cover for the missed work, and had been late to a class.
¶ 4 The DOC hearing officer explained to McKay that the standard of proof would be a "fairly low, probably like 30, 35 percent" certainty.[2] In effect, the hearing officer applied the standard requiring that findings be supported only by "some evidence in the record."[3] The hearing officer found McKay guilty of both infractions. Commenting that "McKay is inappropriate for the DOSA sentencing,"[4] the hearing officer revoked McKay's DOSA sentence. As a result, McKay was required to serve the remaining balance of her sentence in custody, which had the effect of adding three years to her incarceration time.

DISCUSSION
¶ 5 The State concedes that the serious nature of a proceeding resulting in revocation of a DOSA sentence requires a preponderance of the evidence standard of proof. This concession is well taken. The drug offender sentencing alternative was created to encourage offenders to participate in drug treatment while incarcerated. For certain violations, DOC has the authority to administratively terminate the offender from the program, in which case the offender may be reclassified to serve the unexpired term of his or her sentence in custody.[5]
¶ 6 For DOSA violations allegedly committed while on community custody,[6] DOC practice is to afford the procedural due process protections established in Morrissey v. Brewer,[7] including the preponderance of the evidence standard of proof, which ensures a violation finding will be based on "verified facts ... and accurate knowledge."[8]
*858 ¶ 7 For DOSA violations allegedly committed while in prison, however, DOC has apparently required only that the hearing officer's finding be supported by "some evidence in the record."[9] Under the "some evidence" standard, if there is any evidence in the record that could support the conclusion reached by the hearing officer, the decision is affirmed.[10] DOC concedes this was error, and we agree.
¶ 8 The assessment of what process is due depends upon the "extent to which an individual will be condemned to suffer a grievous loss."[11] By signing the DOSA agreement,[12] an offender relies on an implicit promise that the DOSA sentence will be revoked only for failure to live up to the program conditions.[13] An inmate has a significant liberty interest in the expectation of community custody as opposed to incarceration, including the ability to be with family and friends, be employed or attend school, and to live a relatively normal life.[14]
¶ 9 Further, as the United States Supreme Court noted in Morrissey, "[s]ociety has a stake in whatever may be the chance of restoring [the offender] to normal and useful life within the law."[15] DOSA sentences reduce drug and drug felony recidivism, and thus benefit rehabilitated individuals and society as a whole, through reduced crime and lower costs.[16] These are important benefits, implicating a state interest in ensuring that DOSA revocations are founded upon verified facts and accurate knowledge.
¶ 10 The proper standard of proof at DOSA revocations is a preponderance of the evidence.[17] We grant McKay's personal restraint petition and direct DOC to apply a preponderance of the evidence standard on remand.
WE CONCUR: APPELWICK and COLEMAN, JJ.
NOTES
[1] RCW 9.94A.660.
[2] Ex. 13, Response of the Department of Corrections.
[3] Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).
[4] We disagree with McKay that this statement by the hearing officer creates a separation of powers concern. The hearing officer was commenting on McKay's current unfitness for the DOSA program due to her alleged violations, not on the trial judge's original assessment.
[5] RCW 9.94A.660(3)(a).
[6] Revocation of a DOSA during the community custody portion can occur after three violation proceedings where there is a guilty finding, new felony behavior, or egregious violations.
[7] 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The Court held that due process requires:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.
Morrissey, 408 U.S. at 489, 92 S.Ct. 2593; see also In re Personal Restraint Petition of McNeal, 99 Wash.App. 617, 619, 994 P.2d 890 (2000) (liberty interest of a person in community custody closely resembles that of a parolee).
[8] McNeal, 99 Wash.App. at 628, 994 P.2d 890 (quoting Morrissey, 408 U.S. at 484, 92 S.Ct. 2593); see also WAC 137-104-050(14) (department has obligation of proving allegations by a preponderance of the evidence).
[9] Hill, 472 U.S. at 455, 105 S.Ct. 2768.
[10] Hill, 472 U.S. at 455, 105 S.Ct. 2768.
[11] Morrissey, 408 U.S. at 481, 92 S.Ct. 2593.
[12] Once a judge has granted an offender a DOSA, the individual must sign an agreement and consent to chemical dependency treatment. The agreement states:

2. A DOSA sentence requires that you participate in treatment offered by the Department of Corrections....
. . . .
9. If you fail to successfully complete the requirements set forth in the [judgment and sentence] and/or conditions imposed by the DOC, you will be subject to administrative sanctions by the DOC. The DOC may reclassify you and impose the unexpired term of the original sentence, as imposed by the Court. Appendix 1, Supplemental Brief of Respondent.
[13] See Morrissey, 408 U.S. at 482, 92 S.Ct. 2593.
[14] McNeal, 99 Wash.App. at 633, 994 P.2d 890.
[15] Morrissey, 408 U.S. at 484, 92 S.Ct. 2593.
[16] See Aos S., Phipps, P. and Barnoki, R., Washington's Drug Offender Sentencing Alternative: An Evaluation of Benefits and Costs, Washington State Institute for Public Policy (2004), at http://www.wsip p.wa.gov (last visited Mar. 9, 2005).
[17] Prison disciplinary actions which result in the loss of good time credits do not require the same level of due process, because of the important government interest in maintaining order in a prison through prompt hearings and imposition of punishment. Wolff v. McDonnell, 418 U.S. 539, 561-62, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).