

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 2 6 2018

Fairhurst. CQ .
CHIEF JUSTICE

This opinion was filed for record

at 8 am on July 26, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re Personal Restraint Petition of | ) | No. 94280-3 |
| | ) | |
| MATTHEW RAY DOUGLAS SCHLEY, | ) | |
| | ) | Filed    JUL 2 6 2018 |
| Petitioner. | ) | |
| | ) | |

OWENS, J. — This case properly presents one issue: after a trial court imposes a drug offender sentencing alternative (DOSA), what evidentiary standard does due process impose on the Department of Corrections (Department) when revoking that sentence? Our legislature enacted the DOSA statute as a "treatment-oriented" alternative to a standard range sentence of confinement. LAWS OF 1995, ch. 108 pmbl. If a trial court finds that the sentencing alternative is "appropriate" for an individual, half of the sentence is suspended and the person is provided with substance abuse treatment, within available resources. RCW 9.94A.660(3), .662(2). This special sentencing alternative has been found to "significantly lower[] recidivism rates for drug offenders" and provides benefits of $7 to $10 for every dollar the state spends on drug offenders given a DOSA sentence. ELIZABETH DRAKE, WASH. STATE INST.

FOR PUB. POLICY, WASHINGTON'S DRUG OFFENDER SENTENCING ALTERNATIVE: AN UPDATE ON RECIDIVISM FINDINGS 1, 4 (Dec. 2006) (boldface omitted). Matthew Schley's DOSA was revoked by the Department based on a fighting infraction that was proved only by the some evidence standard. Schley filed a personal restraint petition alleging that the DOSA revocation hearing violated his right to due process because the Department failed to prove the fighting infraction by the higher proof standard required at revocation hearings, preponderance of the evidence. The Court of Appeals granted relief, holding that a fact that necessarily results in DOSA revocation must be proved by a preponderance of the evidence. We affirm the Court of Appeals.

## PROCEDURAL AND FACTUAL HISTORY

Matthew Schley was sentenced under the DOSA statute after pleading guilty to first degree theft and second degree burglary. RCW 9.94A.660. This special sentencing alternative allows the court to waive half of the midpoint of the standard sentence range and instead impose a term of community custody. RCW 9.94A.662(1). Accordingly, Schley was sentenced to 29.75 months of incarceration with chemical dependency treatment services and 29.75 months of community custody that included a substance abuse treatment program. The DOSA statute provides that if a DOSA recipient fails to complete the treatment program or is administratively terminated from the program, then the Department shall revoke the

2

DOSA. RCW 9.94A.662(3). If the DOSA is revoked, then the term of community custody is struck and the offender will serve the remainder of his or her sentence in prison. *Id.*

Just a week into his prison-based chemical dependency treatment, Schley received a fighting infraction. According to the Department, Schley argued with another offender, attempted to punch him but missed, and then grabbed his throat and arm. The other offender admitted to punching and kicking Schley after Schley grabbed his throat and arm. At the prison disciplinary hearing, Schley denied the allegations and submitted witness statements from five other DOSA recipients stating they did not see any altercation between him and the other offender. Nonetheless, the hearing officer found him guilty under the some evidence standard and sentenced him to 15 days in segregation and a loss of 15 days of good conduct time.

The fighting infraction set the stage for swift revocation of Schley's DOSA. The day after the prison disciplinary hearing, the clinical staff terminated Schley from the treatment program for the fighting infraction. The Department then held a hearing to determine whether Schley's DOSA should be revoked. At the DOSA revocation hearing, the Department hearing officer found Schley guilty of infraction 762: "[f]ailing to complete or administrative termination from a DOSA substance abuse treatment program." WAC 137-25-030. Schley, representing himself, argued that he had a right to challenge the fighting infraction before his DOSA could be revoked.

3

The hearing officer stated that the only issue before her was whether he had been administratively terminated from treatment.

The hearing officer found by a preponderance of the evidence that the clinical staff had indeed terminated Schley from treatment and consequently revoked Schley's DOSA. By revoking his DOSA, Schley lost access to treatment and was sentenced to serve the remainder of his 5-year sentence in prison. This meant that his 29.75 months of community custody was converted to time in prison without substance abuse treatment. An appeals panel affirmed the revocation, holding it lacked jurisdiction to review the fighting infraction issue. This decision was affirmed by a risk management director.

Schley filed a personal restraint petition in the Court of Appeals, challenging the DOSA revocation on three grounds: (1) the Department did not meet the correct burden of proof, (2) he was denied the right to counsel, and (3) the Department exceeded its authority by imposing three sanctions for a single incident and by revoking a DOSA for conduct unrelated to chemical dependency. The Court of Appeals granted relief based only on the first issue and remanded for a new DOSA revocation hearing, holding that the Department violated Schley's due process rights when it failed to prove the prison infraction by a preponderance of the evidence. *In re Pers. Restraint of Schley*, 197 Wn. App. 862, 870-74, 392 P.3d 1099 (2017). The court held that a fact that necessarily results in revoking a person's DOSA must be

proved by a preponderance of the evidence. *Id.* The court rejected Schley's challenge to the Department's authority and declined to decide whether Schley's hearing warranted counsel, noting that the Department should do so on remand. *Id.* at 872.

The Department moved for discretionary review, arguing that it needed to prove only that Schley's treatment was terminated, not the fighting infraction, by a preponderance of the evidence and that the Court of Appeals wrongly held Schley's hearing warranted appointing him counsel. We granted review of these issues and denied review of the issues raised in Schley's cross motion for discretionary review. *In re Pers. Restraint of Schley*, 189 Wn.2d 1001, 403 P.3d 38 (2017). After oral argument, Schley's counsel notified this court that Schley had been released from custody, having served the full term of the revoked sentence, and was not subject to any term of community custody.

## ISSUES

1.    Must the Department prove a prison infraction by a preponderance of the evidence if it serves as the only basis for revoking a DOSA?

2.    Was Schley entitled to counsel at his DOSA revocation hearing?

## STANDARD OF REVIEW

A petitioner bringing a personal restraint petition is "entitled to full collateral review of a conviction or sentence if the petitioner proves actual prejudice from a constitutional error." *In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 396, 978

5

P.2d 1083 (1999). When reviewing a Court of Appeals' decision on a personal restraint petition, "we review pure questions of law de novo and the question of deference to the Court of Appeals does not arise." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 133, 267 P.3d 324 (2011). "Statutory interpretation is a question of law, subject to de novo review." *City of Spokane v. Spokane County*, 158 Wn.2d 661, 672, 146 P.3d 893 (2006).

## ANALYSIS

We must first address the court's authority to decide this appeal in light of Schley being released from custody without conditions. While the expiration of Schley's sentence technically renders this case moot, we may retain and decide the appeal if it "involves matters of continuing and substantial public interest." *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). To determine whether the appeal presents issues of continuing and substantial public interest, we consider three factors: "'the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question.'" *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972) (quoting *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 622, 104 N.E.2d 769 (1952)). Deciding whether the Department's interpretation of evidence standards at DOSA revocation hearings violates due process rights presents an issue of public interest. Our ruling on this matter will provide

helpful guidance for the Department staff and hearing officers and for individuals serving a DOSA. Because DOSA revocation hearings are not a rare occurrence, the legal questions brought by Schley would undoubtedly reoccur. All three considerations weigh in favor of review here, and thus, we will decide this appeal.

The only issue properly before us is whether due process requires the Department to prove an infraction underlying a treatment termination decision by a preponderance of the evidence in order to revoke a DOSA.

I. *The Department Must Prove an Infraction by Preponderance of the Evidence If It Necessarily Results in Revoking a DOSA*

The Court of Appeals held that "the Department violated Schley's due process rights by using facts proved by 'some evidence' at his infraction hearing to establish his DOSA revocation by a preponderance of the evidence." *Schley*, 197 Wn. App. at 870. The court held that to satisfy due process requirements, the DOSA revocation hearing must be "structured to assure that the fighting finding is based on verified facts and accurate knowledge," aligning the Department's burden with the preponderance of the evidence standard. *Id.* at 869. The Department argues this holding is in conflict with the plain language of the statute and our precedent.

A. *The Evidentiary Standard at DOSA Revocation Hearings Is Preponderance of the Evidence*

Because DOSA is a special sentencing alternative, we must understand the impact that revoking a DOSA has on an individual. When the Department revokes an

7

individual's DOSA, two key liberty interests are taken away. First, the portion of the sentence that was suspended is converted back into a prison sentence. Thus, instead of being released from prison and placed on community custody for the second half of the sentence, that individual must serve that time in prison. Second, that individual is no longer eligible for the DOSA substance abuse treatment programs while in prison. So while the trial court found him or her appropriate for this treatment-oriented sentencing alternative, he or she will not have the opportunity to participate in the DOSA and community custody substance abuse treatment programs. RCW 9.94A.660. As the Court of Appeals has noted, a person facing a DOSA revocation "has a significant liberty interest in the expectation of community custody as opposed to incarceration, including the ability to be with family and friends, be employed or attend school, and to live a relatively normal life." *In re Pers. Restraint of McKay*, 127 Wn. App. 165, 170, 110 P.3d 856 (2005).

A person "facing revocation of a suspended sentence has only minimal due process rights." *State v. Dahl*, 139 Wn.2d 678, 683, 990 P.2d 396 (1999). A person who faces DOSA revocation is entitled to the same minimal due process rights that the United States Supreme Court established for people facing revocation of probation or parole in the *Morrissey* decision. *See id.* at 683 (holding that offenders facing SSOSA (special sex offender sentencing alternative) revocation are entitled to the due process rights established for parolees in *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct.

8

2593, 33 L. Ed. 2d 484 (1972)); *In re Pers. Restraint of McNeal*, 99 Wn. App. 617, 630-34, 994 P.2d 890 (2000) (holding that the procedural due process protections established for parole revocation hearings in *Morrissey* apply to community custody revocation hearings). These rights are enumerated in the Department's administrative hearing procedures. WAC 137-24-030 (procedures for DOSA revocation and sanctions hearings); WAC 137-104-050 (procedures for community custody violation hearings). These due process requirements "exist to ensure that the finding of a violation of a term of a suspended sentence will be based upon verified facts." *Dahl*, 139 Wn.2d at 683.

One of the due process requirements is that the Department has the burden to prove each violation allegation by a preponderance of the evidence. WAC 137-24-030(10); WAC 137-104-050(14); *McKay*, 127 Wn. App. at 170. That standard requires "that the evidence establish the proposition at issue is more probably true than not true." *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005). This is a step up from the "some evidence" standard that is satisfied by "any evidence in the record" to support a guilty finding in a prison disciplinary proceeding. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985); *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 216, 227 P.3d 285 (2010). Neither party disputes that this is the proper evidentiary standard. However, they dispute which issues must be proved.

9

B. *The Department Must Prove Facts That Serve as the Basis for Administrative Termination from Treatment by a Preponderance of the Evidence at DOSA Revocation Hearings*

Though the evidentiary standard is clear, we must interpret the statute to determine which factual issues must be proved at DOSA revocation hearings. The Department argues that it needs to prove only that the clinical staff terminated Schley from treatment and the reasons underlying that termination decision are irrelevant. Schley maintains that the fighting allegation must be proved because it necessarily resulted in his DOSA being revoked. We agree with Schley and find that the Department's interpretation would lead to absurd results and would violate due process protections.

When interpreting the DOSA statute, our duty is to "give effect to the Legislature's intent." *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992). "Where the meaning of statutory language is plain on its face, we must give effect to that plain meaning as an expression of legislative intent." *City of Spokane*, 158 Wn.2d at 673. However, "statutes should receive a sensible construction to [give] effect [to] the legislative intent and, if possible, to avoid unjust and absurd consequences." *State v. Vela*, 100 Wn.2d 636, 641, 673 P.2d 185 (1983).

The Department is correct that the statute's plain language provides that a person's DOSA shall be revoked if he or she "fails to complete the program or [he or she] is administratively terminated from the program." RCW 9.94A.662(3). The

Department argues that based on this language, after the Department's clinical staff administratively terminate a person from the treatment program, it can revoke the DOSA without proving any of the underlying conduct or behavior that led to the clinical staff's decision. This interpretation erodes the due process protections to which Schley was entitled and leads to absurd results.

The due process protections in place for the DOSA revocation hearing, WAC 137-24-030, are rendered toothless if the Department needs to prove only whether treatment was terminated. The fact of treatment termination is undisputable; the hearing officer need look only to the termination document signed by clinical staff to make her decision. Treatment termination is a clinical decision; there is no hearing or opportunity for the DOSA recipient to dispute the facts. Thus, if the Department must prove only that treatment was terminated, not the underlying reasons for termination, the revocation hearing serves as a rubber stamp for a clinical staff decision void of due process protections. There is nothing to suggest that the legislature's intent was for hearing officers to merely adopt a clinical decision to terminate treatment and revoke a DOSA without reviewing the underlying reasons for that decision.

If we accept the Department's contention that treatment termination is the only fact at issue at revocation, then a serious prison infraction proved by the low standard of "some evidence" would create an unstoppable domino effect to revoke a DOSA. As the Court of Appeals noted, "Schley's DOSA was functionally revoked once he

11

was found guilty of fighting by 'some evidence' at the infraction hearing." *Schley*, 197 Wn. App. at 868. The DOSA revocation hearing was not intended to be a "mere formality." *Id.* at 870. In order to effectuate the due process protections at the revocation hearing, the Department must prove the facts underlying the treatment termination hearing by a preponderance of the evidence. This applies only to the use of infractions at the DOSA revocation hearing and does not disturb the "some evidence" standard applied to prison disciplinary hearings. *Grantham*, 168 Wn.2d at 216.

Further, adopting the Department's interpretation of the statute would lead to absurd results. Under the Department's reading, if the clinical staff administratively terminated an individual from treatment for a completely irrational or biased reason, he or she could not address this issue at the DOSA revocation hearing.[1] Amicus Disability Rights Washington provides an example of a potentially absurd result: treatment is terminated for disability-related reasons, but the individual cannot challenge this issue at the revocation hearing because the only material issue is whether the clinical staff signed the paper terminating him or her from treatment. In

_____

[1] The Department states that "[a]t least where no improper motive is alleged, and none is alleged here, the reason why the offender was terminated from treatment does not matter." Suppl. Br. of Dep't of Corr. at 4. While this appears to be a caveat to its argument, it is not a meaningful one because the Department does not describe how a DOSA recipient could challenge an improper motive at the DOSA revocation hearing.

12

order to protect against such an unjust and absurd result, we decline to adopt the Department's interpretation of the statute.

The Department argues that due process does not require proving the facts necessarily resulting in DOSA revocation by a preponderance, relying on *McCormick* and *Gronquist*. *State v. McCormick*, 166 Wn.2d 689, 213 P.3d 32 (2009); *Gronquist*, 138 Wn.2d 388. The Department's reliance on *McCormick* is misplaced as it was a decision regarding revocation of a SSOSA, a special sentencing alternative with different revocation procedures than DOSA. *McCormick*, 166 Wn.2d at 698-705. A SSOSA can be revoked only by a judge in superior court, whereas a DOSA can be removed by a nonlawyer hearing officer in a Department of Corrections proceeding. *Id.* at 698; RCW 9.94A.662(3). Because the procedures for revoking a DOSA and SSOSA differ so greatly, *McCormick* does not guide our analysis.

*Gronquist* does not guide our analysis in this case because a greater liberty is at stake for individuals facing DOSA revocation than there was for Gronquist. *Gronquist*, 138 Wn.2d at 397. Gronquist faced only segregation and the loss of good time credits. *Id.* Additional months or years of incarceration and the loss of treatment are greater liberty interests than segregation and the loss of good time credit. *See Morrissey*, 408 U.S. at 482.

The Department also argues that it is not required to prove "willful misbehavior" before revoking a DOSA. Suppl. Br. of Dep't of Corr. at 6-11. This

13

position is irrelevant as neither the Court of Appeals' decision nor Schley's briefing contends that the Department must prove willful misbehavior.

In conclusion, we hold that in order to revoke a DOSA on the basis of being administratively terminated from treatment, the facts that served as a basis for terminating treatment must be proved by a preponderance of the evidence. This interpretation of the DOSA statute ensures the due process protections at the revocation hearing have effect and avoids absurd results.

### C. *If the Underlying Infraction Is Not Proved by a Preponderance of the Evidence, Then Treatment Must Be Reinstated*

The Department argues that once a DOSA recipient is terminated from treatment, the purpose of a DOSA cannot be fulfilled and, thus, the DOSA must be revoked. The purpose of a DOSA is to "increase the use of effective treatment for substance abusing offenders, thereby reducing recidivism." DRAKE, *supra*, at 1. Thus, treatment is a critical aspect of both the time in prison and the term of community custody. Accordingly, there should not be a situation where a DOSA recipient is terminated from treatment but is still serving a DOSA. Going forward, if the Department fails to prove an infraction underlying the treatment termination decision by a preponderance of the evidence, then the treatment decision is invalid and treatment should be reinstated. This does not stop the Department from moving to revoke the DOSA again at a later date. It simply requires that it bring enough testimony and other evidence to prove the underlying facts that led to treatment

14

termination by a preponderance of evidence, just as it must to revoke a DOSA when a DOSA recipient "fails to complete" the treatment program. RCW 9.94A.662(3).

II. *We Need Not Decide Whether Schley Was Entitled to Counsel*

The Department argues that we should hold Schley's hearing did not warrant appointment of counsel. However, we need not decide that issue here. The Department argues that the Court of Appeals wrongly held that Schley had a right to counsel at his DOSA revocation hearing. However, the Court of Appeals explicitly declined to decide whether Schley had a right to counsel in that hearing. *Schley*, 197 Wn. App. at 872 ("We need not and do not decide that issue here."). The court went only so far as holding that under its *Grisby* decision, Schley had a right to be informed that he could request legal representation. *Id.* at 870-72 (citing *Grisby v. Herzog*, 190 Wn. App. 786, 362 P.3d 763 (2015)). In *Grisby*, decided after Schley's DOSA revocation hearing, the Court of Appeals held that due process required the Department to decide on a case-by-case basis whether representation is warranted at a DOSA revocation hearing. *Grisby*, 190 Wn. App. at 806. Going forward, the Department should follow *Grisby* and decide whether individuals facing DOSA revocation should be appointed counsel on a case-by-case basis.

CONCLUSION

We hold that at DOSA revocation hearings, if revocation is based on the clinical staff administratively terminating a person from treatment, the Department

15

has the burden to prove the facts that served as a basis for that decision by a preponderance of the evidence. This construction of the DOSA statute ensures the due process protections at the revocation hearing have effect and avoids absurd results. In the event that the Department fails to prove an infraction underlying the treatment termination decision by a preponderance of the evidence, then the treatment termination is invalid and treatment should be reinstated. Accordingly, we affirm the Court of Appeals. We decline to decide the issue of whether Schley's case warranted appointment of counsel as it was not a holding in the Court of Appeals' decision.

WE CONCUR:

_Owens, J._

_Wiggins, J._

_Gordon McCloud, J._

_Yu, J._

No. 94280-3

GONZÁLEZ, J. (concurring)—I concur with the lead opinion that

preponderance of the evidence is the appropriate standard at a drug offender

sentencing alternative (DOSA) revocation hearing. Lead opinion at 14. I write

separately, however, because I am concerned by the very low burden of proof used

in prison disciplinary cases and its effect on liberty interests. In the context of

serious prison infractions, justice and fairness require more than "some evidence."

To date, we have maintained that the Department of Corrections (DOC)

satisfies due process if it presents "some evidence" that an infraction occurred. *See*

*In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 215-16, 227 P.3d 285 (2010);

*see also In re Pers. Restraint of Reismiller*, 101 Wn.2d 291, 293, 296, 678 P.2d

323 (1984) (requiring "some connection"). Our attempts to distinguish and rank

liberty interests are not working. Due process requires more than "some evidence"

can offer. *See Wolff v. McDonnell,* 418 U.S. 539, 558, 568, 94 S. Ct. 2963, 41 L.

Ed. 2d 935 (1974) ("Perhaps as the problems of penal institutions change and

*In re Pers. Restraint of Schley*, No. 94280-3 (González, J., concurring)

correctional goals are reshaped, the balance of interests involved will require [a different due process standard].").

I am skeptical that the "some evidence" standard provides incarcerated people with adequate due process protections in practice. The "some evidence" standard is met if *any* evidence of guilt is presented. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 86, L. Ed. 2d 356 (1985). For instance, at Matthew Schley's DOSA revocation hearing he argued:

> [W]e have a big, large thing going on here at OCC [(Olympic Correctional Center)] . . . where inmates who don't like other inmates just X them out by writing . . . false statements, boom, they're gone, because they know, there's no way to win these revocation hearings.

Report of Proceedings (Apr. 2, 2015) at 37-38. Schley's concerns, whether factually accurate in his case or merely hypothetical, are valid. Under the "some evidence" standard, 1 inmate's lie would be sufficient to undermine the sworn testimony of 10 inmates because there would exist *a piece* of evidence to support the infraction. *See Hill*, 472 U.S. at 455. This low burden means, short of total arbitrariness, DOC can always meet its burden, find a serious infraction took place, and strip a prisoner of whatever liberty interest is at stake.

It is neither useful nor appropriate to create a gradient of liberty interests among incarcerated people. A DOSA recipient's liberty interest in substance abuse treatment is not inherently greater than another inmate's liberty interest in

2

*In re Pers. Restraint of Schley*, No. 94280-3 (González, J., concurring)

staying out of solitary confinement, as the lead opinion implies. Lead opinion at 13 (citing *In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 397, 978 P.2d 1083 (1999)). I have found no principle in support of such a distinction, and diverge from the lead opinion only insofar as I believe the standard of proof should be uniform.

The very thing against which Justice Utter warned in his dissent in *In re Personal Restraint of Johnston* has come to fruition: the "some evidence" standard equates to a "coin toss" and does not offer meaningful due process protection to incarcerated people. 109 Wn.2d 493, 503, 745 P.2d 864 (1987). I would hold that all serious prison infractions must be proved by the preponderance of the evidence if there is a liberty interest at stake. Because the lead opinion agrees, though in the more limited context of a DOSA revocation hearing, I respectfully concur.

3

González, J.

No. 94280-3

FAIRHURST, C.J. (dissenting)—I disagree with the lead opinion that due process requires the Department of Corrections (DOC) to once again prove the facts underlying a drug offender sentencing alternative (DOSA) treatment program termination decision in a DOSA revocation hearing. The hearing to revoke an alternative sentence is not part of the criminal proceedings, and the due process rights afforded at the revocation hearing are not the same as those provided to a defendant in a criminal trial. *State v. Dahl*, 139 Wn.2d 678, 683, 990 P.2d 396 (1999). "[A]n offender facing a revocation of a suspended sentence has only minimal due process rights because the trial has already occurred and the offender was found guilty beyond a reasonable doubt." *State v. McCormick*, 166 Wn.2d 689, 700, 213 P.3d 32 (2009).

Inmates are entitled to minimum due process in serious infraction cases. *In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 398, 978 P.2d 1083 (1999). Minimum due process means the inmate must "(1) receive notice of the alleged violation; (2) be

- 1 -

provided an opportunity to present documentary evidence and call witnesses when not unduly hazardous to institutional safety and correctional goals; and (3) receive a written statement of the evidence relied upon and the reasons for the disciplinary action." *Id.* at 396-97 (citing *Dawson v. Hr'g Comm.*, 92 Wn.2d 391, 397, 597 P.2d 1353 (1979)). "Factual determinations of prison officials must stand if there is 'some evidence' in the record to support the prison disciplinary decision." *Id.* at 397 n.7 (quoting *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985)).

Inmates with a DOSA sentence must sign a DOSA agreement and comply with the DOSA treatment program requirements. *See* Pet'r/Appellant's Br. (Pet'r's Br.), App. at 23-26. An offender violates the DOSA agreement by being found guilty of "[a]ny major infraction that causes a change in custody level." *Id.* at 23. An offender violates the DOSA treatment program requirements by engaging in "[a]ny threat or act of violence toward staff or another patient." *Id.* at 25. Offenders who violate the DOSA agreement or treatment program requirements can be administratively terminated from the DOSA treatment program. *See id.* at 23, 25; RCW 9.94A.662(3).

Offenders terminated from the DOSA treatment program are given a serious infraction and entitled to a DOSA revocation hearing at which "[DOC] has the obligation of proving each of the allegations of violation by preponderance of the evidence." WAC 137-24-030(10); *In re Pers. Restraint of McKay*, 127 Wn. App. 165,

170, 110 P.3d 856 (2005). Under the plain language of the statute and regulation, at a DOSA revocation hearing for administrative termination the only relevant question is whether the offender was terminated from the treatment program. RCW 9.94A.662(3) requires that a person terminated from the DOSA treatment program "shall be reclassified to serve the unexpired term of his or her sentence as ordered by the sentencing court."

Matthew Schley arrived at Olympic Corrections Center (OCC) on January 7, 2015, to serve two King County DOSA sentences. *See* Pers. Restraing Pet. (PRP), Pet'r's Br., App. at 35. On January 21, 2015, Schley reviewed and signed the DOSA agreement and chemical dependency (CD) treatment requirements. *Id.* at 24-26. The treatment requirements provided, **"The following behaviors WILL result in termination from the Department's CD treatment program:** 1. Any threat or act of violence toward staff or another patient." *Id.* at 25; Resp. of DOC, Ex. 5. Schley began programming in the OCC Therapeutic Community Long-Term Treatment CD Program on January 22, 2015. Pet'r's Br., App. At 36; Resp. of DOC, Ex. 7, at 2.

On January 26, 2015, Schley was charged with a serious infraction for fighting with another inmate. Pet'r's Br., App. at 27; WAC 137-25-030 (serious violation 505). Schley was placed into administrative segregation the next day pending DOC's investigation. DOC held an infraction hearing on February 9, 2015. Pet'r's Br., App. at 61. The hearing officer found Schley guilty of a serious infraction under the some

evidence standard—based on physical evidence of his injuries, the other inmate's injuries, and witness information—and sanctioned Schley to 15 days of segregation and 15 days of loss of good conduct time. *Id.* at 27; Resp. of DOC, Ex. 13, at 3.

On February 10, 2015, the treatment program administratively terminated Schley for violating the program requirements by fighting with another patient. Pet'r's Br., App. at 36; Resp. of DOC, Ex. 13, at 2. Schley was transferred to the Washington Corrections Center on February 11, 2015. On February 13, 2015, Schley's infraction was affirmed on appeal. Pet'r's Br., App. at 61.

Schley's administrative termination from the DOSA treatment program subjected him to a DOSA revocation hearing for committing a "762" serious infraction. *See* WAC 137-25-030 ("762 – Failing to complete or administrative termination from a DOSA substance abuse treatment program."). At the DOSA revocation hearing on April 2, 2015, the hearing officer found by a preponderance of the evidence that Schley had been terminated from the program and revoked the DOSA sentence pursuant to RCW 9.94A.662(3). Pet'r's Br., App. at 38; Resp. of DOC, Ex. 13, at 4. The DOSA statute provides, "An offender who . . . is administratively terminated from the program shall be reclassified to serve the unexpired term of his or her sentence as ordered by the sentencing court." RCW 9.94A.662(3).

Schley was afforded due process at every stage of this case. With regard to the fighting infraction hearing (serious violation 505), DOC provided minimum due

-4-

process because Schley was provided notice, an opportunity to be heard, a written statement of the evidence and reasons for the action, and the hearing officer found Schley guilty of a serious infraction under the some evidence standard. *See* Pet'r's Br., App. at 38. With regard to the DOSA revocation hearing (serious violation 762), DOC again provided minimum due process because Schley was provided notice, an opportunity to be heard, a written statement of the evidence and reasons for the action, and the hearing officer found Schley guilty by a preponderance of the evidence as required by WAC 137-24-030(10). *See* Pet'r's Br., App. at 34. At no point during the initial hearings or appeals was Schley denied minimum due process or the protections afforded to him by prison regulations.

The lead opinion's conclusion that due process requires DOC to again prove the fighting infraction by a preponderance of the evidence at a subsequent hearing conflicts with this court's holding in *Gronquist*, 138 Wn.2d 388. In *Gronquist*, the inmate was charged and found guilty of a serious prison infraction of committing four general prison infractions within a span of six months. *Id.* at 390-91. The inmate filed a PRP, arguing that he had a due process right to relitigate the general infractions at his hearing on the serious infraction under the higher some evidence standard applicable to serious prison infractions.

This court held that "[DOC]'s refusal to allow [the inmate] an opportunity to relitigate collateral matters to his general infraction in a [serious infraction] hearing did

- 5 -

not constitute a deprivation of minimum due process." *Id.* at 401. The court was satisfied that the inmate was afforded sufficient process because DOC complied with the regulations regarding general infractions and provided the inmate with notice and an opportunity to be heard at the serious infraction hearing:

> [The inmate] was afforded an opportunity to contest the imposition of discipline in the tobacco incident and the other general infractions. That is all the law requires. He was afforded minimum due process in the [serious infraction] hearing; he had the opportunity to know the allegation against him and to appropriately contest whether he had actually been found culpable for four predicate minor infractions within six months. He has failed to prove a complete miscarriage of justice in this case.

*Id.* at 406-07 (footnote omitted).

The facts of this case are analogous to the facts of *Gronquist* and warrant the same result. Just like in *Gronquist*, where the inmate sought to relitigate a prior general infraction under the heightened standard of proof applicable at a serious infraction hearing, Schley seeks to relitigate a serious infraction under the heightened standard of proof applicable at a DOSA revocation hearing. We held in *Gronquist* that due process does not allow an inmate to collaterally challenge his guilt of a prior infraction in a subsequent hearing. *Id.* at 403. Therefore, Schley may not collaterally challenge his guilt of a prior infraction at his DOSA revocation hearing. Because there is no meaningful distinction between this case and *Gronquist*, I disagree with the lead opinion's contention that due process requires that Schley be permitted to relitigate his prior fighting infraction at a DOSA revocation hearing.

- 6 -

I also disagree with the lead opinion's holding on this issue because it leads to an absurd result. Under the lead opinion's holding, an inmate could be proved guilty of a fighting infraction under the some evidence standard and consequently be terminated from treatment—but the inmate would retain his DOSA sentence if DOC could not prove the facts underlying the fighting infraction by a preponderance of evidence. The purpose of the DOSA statute is to provide substance abuse treatment. Allowing an inmate to retain a DOSA sentence after being terminated from treatment runs counter to the very purpose of the DOSA statute. Perhaps more importantly, it would be fundamentally unfair to allow an offender to benefit from the shortened prison sentence under DOSA if the core purpose of the statute is no longer served. I respectfully dissent.

Fairhurst, C.J.

Madsen, J.