IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Respondent,

      v.

AUSTEN MICHAEL WHITBECK,

                Appellant.

No. 84182-3-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, A.C.J. — Austin Whitbeck appeals the trial court's ruling to revoke his residential drug offender sentencing alternative, asserting violations of his due process right to notice and that the findings of fact were insufficient because they did not reflect the entirety of the evidence relied upon. Whitbeck did not raise the issue of notice before the trial court, nor did he object to the sufficiency of the findings at the time of the hearing, so those challenges are waived. The court's findings were sufficient and its revocation ruling was not an abuse of discretion. Accordingly, we affirm.

FACTS

On April 28, 2021, the State charged Austen Whitbeck with one count of burglary in the first degree, a class A felony and a most serious, or "strike,"

offense.[1]  Pursuant to an agreement with the State, Whitbeck entered a guilty plea to amended charges: one count each of residential burglary, malicious mischief in the first degree, and assault in the third degree.  The State agreed to recommend a residential drug offender sentencing alternative (DOSA) wherein Whitbeck would serve 24 months of community custody, on the condition that he complete three to six months of residential substance use disorder treatment.  On October 22, 2021, the trial court adopted the parties' joint recommendation and imposed the residential DOSA.  The trial court set a progress hearing for January 28, 2022.

On November 8, 2021, Whitbeck began residential treatment at American Behavioral Health Systems (ABHS) in Chehalis, Washington.  One month later, on December 9, Whitbeck was temporarily discharged from ABHS "due to COVID concerns" and was instructed to resume inpatient treatment following a 14-day self-quarantine period.  During his temporary discharge from ABHS, Whitbeck was instructed to report via telephone to the Department of Corrections (DOC) Renton field office on December 14, 2021.  However, according to DOC, Whitbeck was arrested in downtown Seattle on December 11, 2021.  The incident was outlined in a DOC notice of violation (NOV) filed on December 17, 2021, which indicated that Whitbeck had smashed the glass door of a building and pulled the fire alarm while intoxicated.  When officers arrived, they observed him engaging in self-harming behavior.  During the arrest, officers asserted Whitbeck physically resisted and spat blood on them.  He was subsequently taken to the hospital by police.

---

[1] RCW 9A.52.020; RCW 9.94A.030(32)(a).

Whitbeck did not report to the DOC Renton field office on December 14 as required. As a result, the December 17 NOV identified one violation for failure to report to DOC as ordered and another for noncompliance with urinalysis (UA) based on that failure to report. DOC requested the trial court issue a bench warrant for Whitbeck's arrest and revoke the residential DOSA. On January 19, 2022, DOC filed a supplemental NOV as Whitbeck had failed to return to ABHS and resume treatment following his temporary discharge. Again, DOC recommended revocation of the DOSA.

On January 21, 2022, the court conducted a review hearing on the DOSA and Whitbeck appeared in custody.[2] He stipulated to the three violations. Rather than revoking the DOSA as DOC recommended, the trial court entered an order for Whitbeck to return to inpatient treatment at ABHS and set a review hearing.[3] Five days later, Whitbeck resumed treatment. He successfully completed the program and was discharged from ABHS on April 27, 2022. Whitbeck was found to be in compliance with the DOSA at each of the three compliance hearings conducted while he was in residential treatment.

Whitbeck was instructed to report to the DOC field office within 24 hours of discharge from ABHS and he complied. He was further ordered to report to the DOC field office the following week on May 4, 2022, but failed to do so. Two days later, DOC filed a NOV asserting two new violations: one for the failure to report

_____

[2] It is unclear from the record whether Whitbeck was in custody due to the bench warrant requested by the DOC or because of the arrest in Seattle on December 11, 2021.
[3] The State notes that Whitbeck did not object to the trial court's use of a "pre-printed form" for this hearing, but challenges the use of an identical form at the hearing that resulted in revocation of the DOSA. Respondent's Br. at 6.

and another for the failure to comply with the UA requirement. The NOV provided that a DOC community corrections officer (CCO) visited Whitbeck's release address, spoke with the housing manager, and discovered that Whitbeck was kicked out of the clean and sober house on April 29 after he "admitted to consuming methamphetamine." DOC again recommended that the court issue a bench warrant for Whitbeck's arrest and revoke the residential DOSA.

At the violation hearing conducted on May 27, 2022, Whitbeck again appeared in custody[4] and stipulated that he committed the two violations contained in the NOV. He asserted that he had relapsed and further admitted that he absconded during his temporary discharge from ABHS in December 2021. Whitbeck offered an explanation of the circumstances surrounding these newest violations and requested to be returned to inpatient treatment.

The State agreed with the DOC recommendation and argued for revocation, asserting "it's time, given the violations and the concern here and the serious nature of the charge, to revoke the DOSA." The State maintained that Whitbeck had not treated the sentencing alternative seriously. After the State provided the trial court with the sentencing range for Whitbeck's offenses, the court noted that after Whitbeck's initial sentencing, there had been "an allegation of Theft, Obstructing and False Statement." The court expressed particular concern with the allegation of obstructing.

In response, Whitbeck asserted that he was taking the DOSA seriously and attempting to be accountable. He explained that his recent relapse was a result of

___

[4] Again, it is unclear from the record whether he was held in custody on the warrant DOC recommended in the May 2022 NOV or on some other matter.

being taken advantage of by the individuals at the clean and sober house. Additionally, he stated that he attempted to check in at the DOC field office on May 4, but he was misadvised by people on the bus, got off on the wrong stop, and arrived "literally like five minutes late."

The trial court revoked the DOSA, stating that it was "too concerned about community safety to conclude that a second return to ABHS [would be] appropriate." Based on his stipulation, the trial court found that Whitbeck had violated the conditions of the DOSA by failing to report to DOC and failing to submit a UA; it also found those violations were willful. The trial court imposed a standard range sentence of 22 months in prison, followed by 12 months of community custody.

Whitbeck timely appealed.

ANALYSIS

The DOSA program was created to encourage defendants to participate in substance-abuse treatment. In re Pers. Restraint of McKay, 127 Wn. App. 165, 168, 110 P.3d 856 (2005). Pursuant to RCW 9.94A.660(3), once a trial court determines that a defendant is eligible for a residential DOSA, the court may waive a standard range sentence and instead impose residential treatment under RCW 9.94A.664. When the trial court imposes a residential DOSA, it "shall impose treatment and other conditions" during "any period of community custody." RCW 9.94A.664(2)(a). DOC may also set additional conditions of community custody. RCW 9.94A.660(6)(b). If the defendant violates the conditions or requirements of the DOSA at any point during the period of community custody, the trial "court may

order the [defendant] to serve a term of total confinement within the standard range of the [defendant's] current offense."  RCW 9.94A.660(7)(c).

I.      Issue Preservation and RAP 2.5

Whitbeck assigns error to the revocation of his DOSA and the trial court's "stated grounds" for doing so.  According to Whitbeck, he was denied due process because the State "failed to notify him of the grounds it argued in support of revocation" and the trial court "relied on those grounds" in revoking the sentencing alternative.  We decline to reach the merits on these unpreserved challenges.

 "It has long been the law in Washington that an 'appellate court may refuse to review any claim of error which was not raised in the trial court.'"  State v. O'Hara, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009) (quoting RAP 2.5(a)).  Generally, we will not consider issues raised for the first time on appeal.  State v. A.M., 194 Wn.2d 33, 38, 448 P.3d 35 (2019).  However, a party may seek review of a "manifest error affecting a constitutional right" for the first time on review.  RAP 2.5(a)(3).  To satisfy RAP 2.5, "an appellant must demonstrate (1) the error is manifest, and (2) the error is truly of constitutional dimension."  O'Hara, 167 Wn.2d at 98.  In other words, the appellant must make a plausible showing "that the error has practical and identifiable consequences in the trial of the case."  In re Det. of T.C., 11 Wn. App. 2d 51, 61, 450 P.3d 1230 (2019).

Whitbeck's assignments of error concerning the alleged violation of his right to due process were not preserved for review as he failed to object on this basis at the time of the court's ruling.  Although he asserts in his opening brief that his right to due process was violated, he fails to even reference the exception set out

in RAP 2.5(a) until his reply brief. This court will not consider issues raised for the first time in a reply brief. State v. Ho, 8 Wn. App. 2d 132, 140-41, 437 P.3d 726 (2019). Even issues of constitutional magnitude raised for the first time in a reply brief need not be considered. State v. Manthie, 39 Wn. App. 815, 826 n.1, 696 P.2d 33 (1985). As Whitbeck failed to preserve his due process argument and waited until his reply brief to address RAP 2.5(a), we decline to review his claims regarding notice.[5]

II.     Written Findings Supported by the Record

Whitbeck's remaining assignment of error reads: "The trial court's written findings of fact were checked boxes on a standardized form and do not reflect the evidence it stated it relied on or the reasons it stated supported revocation of the DOSA." Whitbeck avers that our review should be based on the trial court's statements at the revocation hearing rather than the written findings of fact set out in the revocation order. We disagree and decline to follow his proposed method of review.

A ruling on the revocation of a suspended sentence due to a violation is reviewed for abuse of discretion. State v. McCormick, 166 Wn.2d 689, 705-06, 213 P.3d 32 (2009). An abuse of discretion exists when the decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" State v. Hays, 55 Wn. App. 13, 16, 776 P.2d 718 (1989) (internal quotation marks omitted) (quoting State v. Cunningham, 96 Wn.2d 31, 34, 633 P.2d 886 (1981)).

---

[5] Accordingly, we do not consider Whitbeck's first and third assignments of error. Because his second assignment of error concerns the propriety of the trial court's written findings of fact, it is properly before us.

Because revocation hearings are not criminal proceedings, a defendant "facing revocation of a suspended sentence has only minimal due process rights." State v. Dahl, 139 Wn.2d 678, 683, 990 P.2d 396 (1999). The minimal due process rights afforded to someone facing revocation of a DOSA are the same as those provided to individuals facing revocation of parole or probation. In re Pers. Restraint of Schley, 191 Wn.2d 278, 286, 421 P.3d 951 (2018). They include the following:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrissey v. Brewer, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972).

Trial courts may revoke a residential DOSA if the defendant violates the terms. RCW 9.94A.660(7)(c). DOC "has the burden to prove each violation allegation by a preponderance of the evidence" that requires the evidence to show the allegation at issue is "more probably true than not true." Schley, 191 Wn.2d at 286; In re Pers. Restraint of Sego, 82 Wn.2d 736, 739 n.2, 513 P.2d 831 (1973).

At the revocation hearing on May 27, 2022, Whitbeck admitted to the two alleged violations set out in the May 6 NOV: the failure to report and failure to comply with UA on May 4. In fact, the record demonstrates that Whitbeck admitted each of the five violations DOC alleged during the time he was serving the residential DOSA. As Whitbeck admitted to the violations, the trial court's findings

that they occurred were clearly supported by a preponderance of the evidence. Alone, the two most recent violations were sufficient grounds for the trial court to revoke the residential DOSA.[6] In its oral findings, the trial court noted the severity of this case, as it was initially charged as a Class A felony, and stated that it was "always probably at the margins in terms of whether a DOSA was an appropriate sentence." Further, the trial court referenced Whitbeck's criminal history, both the convictions which predated the case at hand and new allegations that arose during the DOSA. Finally, the court explained that it was "too concerned about community safety to conclude that a second return to ABHS is appropriate." The revocation order noted that the trial court considered the oral statements of Whitbeck and argument from counsel; the written findings were that Whitbeck had violated the DOSA by failing to report to DOC as ordered and failing to submit to a UA, and that both violations were willful.

The fact that the State argued for revocation based on the entirety of Whitbeck's record of noncompliance with the terms of the DOSA does not render the court's ruling an abuse of discretion. It was entirely proper for the court to review the case file as a whole prior to making its ruling. Whitbeck himself argued historical facts, specifically his prior completion of treatment, in support of his request for another opportunity at residential treatment. He appropriately noted that the time for the court to consider the seriousness of the charges was at the original sentencing hearing when the agreed recommendation for a residential DOSA was accepted and imposed.

---

[6] Whitbeck further admitted to absconding when he was released from ABHS to self-quarantine in December 2021, and to relapsing after he was discharged in April 2022.

Whitbeck cites to In re Det. of LaBelle to argue that the trial court's "preprinted boilerplate revocation order" was inadequate, as it lacked "detailed, case-specific findings." 107 Wn.2d 196, 728 P.2d 138 (1986). LaBelle addressed the requirements of written findings of fact in the context of involuntary commitment under the involuntary treatment act[7] (ITA). Id. at 218. Our Supreme Court explained that "[w]hile the degree of particularity required in findings of fact depends on the circumstances of the particular case, they should at least be sufficient to indicate the factual bases for the ultimate conclusions." Id. Further, the court noted that "a trial court is not required to make findings of fact on all matters about which there is evidence in the record; only those which establish the existence or nonexistence of determinative factual matters need be made." Id. at 219.

Whitbeck's reliance on LaBelle is misplaced. LaBelle concerned orders for 90 days of involuntary treatment when a person is detained pursuant to the ITA, not the revocation of a discretionary sentencing alternative like a DOSA. While findings in the legal context of the former must be rooted in clear, cogent, and convincing evidence, those in the latter need only be supported by a preponderance of the evidence. Compare LaBelle, 107 Wn.2d at 218, with Schley, 191 Wn.2d at 286-87. Moreover, LaBelle explained that trial court's need to make findings of fact only concerning matters "which establish the existence or nonexistence of determinative factual matters." 107 Wn.2d at 219. Here, the two determinative factual matters before the trial court were the alleged violations of

---

[7] Ch. 71.05 RCW.

the DOSA based on Whitbeck's failure to report to the DOC field office and his failure to submit to a UA on May 4. Accordingly, these are the only two matters on which the trial court was required to make written findings. As Whitbeck admitted each violation, there is no question as to the sufficiency of proof underlying those findings. Perhaps more critically on this matter, Whitbeck did not object to the findings entered at the conclusion of the review hearing or otherwise suggest that the revocation order, that he and his counsel both signed, did not properly reflect the court's ruling, reasoning, or the evidence it relied upon.

Though we may look to a trial court's oral statements when the written findings are inadequate or unclear, there is no need to supplement here. See State v. Holland, 98 Wn.2d 507, 517, 656 P.2d 1056 (1983). Even assuming arguendo that the written findings were inadequate, this court may affirm the trial court on "any basis supported by the record." State v. Poston, 138 Wn. App. 898, 905, 158 P.3d 1286 (2007). Because the record plainly supports the trial court's findings on both of the alleged violations to which Whitbeck stipulated, the trial court did not err in revoking Whitbeck's residential DOSA.

Affirmed.

WE CONCUR:

- 11 -