IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) | No. 40114-6-III |
| | ) | |
| JOSEPH OMAR SABIR, | ) | |
| | ) | UNPUBLISHED OPINION |
| Petitioner. | ) | |

MURPHY, J. — Joseph Sabir filed this personal restraint petition challenging a revocation by the Department of Corrections (DOC) of his drug offender sentencing alternative (DOSA) and reclassification to confinement.

We grant Sabir's petition in part. At the DOSA hearing, Sabir asked to call a witness. That witness was not called. This aspect of Sabir's personal restraint petition is granted. We do not reach the other due process claims as they are unlikely to reoccur on remand. The remainder of Sabir's petition is denied. We vacate the DOC's revocation order and remand for a new hearing.

## FACTS

On July 27, 2020, Sabir pleaded guilty in Spokane County Superior Court to criminal mischief and fourth degree assault—domestic violence. He was sentenced to 107

days of confinement, with 257 days suspended on the assault, and 12 months of community custody, which included a prohibition from possession or consumption of controlled substances, and no criminal law violations. While on community custody, Sabir was arrested in Post Falls, Idaho, for possession of a controlled substance and drug paraphernalia. The DOC administratively dismissed, without prejudice, possible violations related to the failure of Sabir to report and being charged with the Idaho crimes. After Sabir's release from the Kootenai County Jail, Sabir failed to report to community custody in Spokane, and a warrant was issued for his arrest.

In January 2021, the DOC was notified that Sabir was arrested in Spokane on charges of unlawful possession of a firearm.

Community custody violations were levied, inclusive of Sabir twice absconding from DOC supervision, trice failing to comply with the condition to not possess or consume controlled substances, as well as traveling outside of Washington without written permission, failing to comply with the condition to not possess a firearm or ammunition, and failing to comply with the condition to not have contact with known gang members and not wear gang paraphernalia. These violations were addressed with a 30-day confinement sanction.

On April 26, 2021, in Spokane County Superior Court, Sabir pleaded guilty to the crime of second degree unlawful possession of a firearm. The sentencing court imposed a

No. 40114-6-III
*In re Pers. Restraint of Sabir*

DOSA with 27.75 months of confinement and 27.75 months of community custody supervision. Community custody conditions included a substance evaluation and treatment program.

In November 2021, while still in custody on the April 2021 conviction, Sabir appeared in Kootenai County District Court for sentencing on the drug possession and paraphernalia convictions.

Relative to the April 2021 DOSA, Sabir was released in November 2022 to begin the community custody portion of that sentence.

On February 21, 2023, after Sabir failed to report to his assigned community custody officer, a warrant was issued after that officer failed to locate Sabir. On March 3, 2023, the substance use disorder facility, SPARC (Spokane Addiction Recovery Centers), discharged and terminated Sabir for failing to maintain contact, not attending programming, and having positive urinalysis results.[1]

In July 2023, Sabir was arrested and charged in Spokane County Superior Court with additional crimes, which resulted, on September 5, 2023, in Sabir pleading guilty to

_____

[1] Sabir references a substance use disorder discharge showing the reason for discharge as treatment "[c]ompleted." Pet'r's Reply to Resp't's Response, Attach. 1 at 1. This discharge from treatment was for a treatment admission date of November 29, 2021, and discharge date of October 21, 2022. Under the April 2021 DOSA, Sabir had to continue with recommended substance use disorder treatment. It is this substance use disorder termination that was the basis for one of the subject violations.

(1) possession of a controlled substance with the intent to deliver, (2) first degree

unlawful possession of a firearm, (3) obstructing law enforcement, and (4) making false

or misleading statements to a public servant. The trial court imposed a DOSA on the first

two counts, with credit for time served imposed on the remaining two counts.

In September 2023, the DOC generated a report alleging violations of community

custody requirements for the July 2020 conviction as well as the April 2021 DOSA.

Sabir attended the hearing with the DOC on September 27, 2023.[2] Among other

preliminary matters, the hearing officer informed Sabir of his right to call witnesses.

Sabir answered that he wanted to call his wife as a witness. The discussion of Sabir

requesting that his wife be called as a witness is as follows:

| | |
|---|---|
| [HEARING OFFICER]: | Mr. Sabir, do you intend to call any witnesses today? |
| SABIR: | Um, I just wanted to call my . . . my wife as a witness. |
| [HEARING OFFICER]: | Okay. |
| SABIR: | Um . . . |
| [HEARING OFFICER]: | And, what is her name? |
| SABIR: | Her name is Jessica. |
| [HEARING OFFICER]: | Same last name? |
| SABIR: | Yes, ma'am. |
| [HEARING OFFICER]: | And her phone number? |
| SABIR: | Um . . . [area code] |

---

[2] The hearing addressed community custody violations arising out of the 2020 and 2021 convictions. The hearing officer stated and explained that the 2023 DOSA was not at issue because Sabir had not yet moved to the community custody portion of that conviction.

No. 40114-6-III
*In re Pers. Restraint of Sabir*

| | |
|---|---|
| [HEARING OFFICER]: | Okay, [area code]? |
| SABIR: | Yes, [phone number]. |
| [HEARING OFFICER]: | Okay, will she be speaking and providing evidentiary testimony regarding any of the seven alleged violations; or will she be speaking more on the second half of the hearing, which is how you were doing in the community? |
| SABIR: | That part. |
| [HEARING OFFICER]: | The second half? |
| SABIR: | Yes, ma'am. |
| [HEARING OFFICER]: | Okay, she doesn't have any relevant testimony regarding the allegations, or alleged allegation? |
| SABIR: | No, ma'am. |

Response of the DOC at 216-17.

Sabir pleaded guilty to six of the seven allegations. He pleaded not guilty to the

allegation that he failed to obey all laws on the belief that this violation had already been

adjudicated. The specific allegation that Sabir pleaded not guilty to was:

6.  Joseph O. Sabir failed to obey all laws on 11/20/2020, as evidenced by a Judgment and Sentence for Kootenai County, Idaho cause # CR-28-20-17757, resulting in a conviction for Possession of Amphetamine, contrary to Idaho Code #37-27332 on 11/29/2021, in Kootenai County, Idaho.

Response of the DOC at 173.

After presentation of evidence on allegation number six, and the pleas of guilty to

the other allegations, the hearing officer found Sabir guilty of all seven violations.

5

The DOC recommended reclassification of Sabir's DOSA to confinement for a term to be determined by the record staff. The hearing officer sought Sabir's input as to his recommendation for what disposition would be fair and reasonable. Sabir explained his situation and events that occurred in his life. Sabir articulated a desire to complete treatment. Sabir ultimately recommended a punishment of 15 days with the comment that he would have the 27.75 months of community custody to "help me stay on track when I get out there." Response of the DOC at 249.

The hearing officer revoked Sabir's 2021 DOSA, stating a 15-day sanction would be insufficient to address the behaviors.

Sabir's wife was not contacted at any time during the hearing.

Following the hearing, the hearing officer completed a written decision summary report. Sabir appealed the decision to reclassify his 2021 DOSA "based on a procedural issue, a jurisdictional issue and [the] sanction imposed." Response of the DOC at 179. The appeals panel affirmed the process and the decision. Sabir then filed this personal restraint petition.

## ANALYSIS

### *Standard of review*

A petitioner who "has not had an opportunity for prior judicial review . . . need demonstrate only that he is restrained under RAP 16.4(b) and that the restraint

is unlawful under RAP 16.4(c)." *In re Pers. Restraint of Wilson*, 17 Wn. App. 2d 72, 81, 484 P.3d 1 (2021). The general requirement that the petitioner establish that a constitutional error resulted in actual and substantial prejudice or that a nonconstitutional error resulted in a fundamental defect resulting in a complete miscarriage of justice is not required here. *See id*. Sabir's challenge to the outcome of the DOSA revocation is an original action in the appellate court, which has not yet been the subject of judicial review. Therefore, Sabir need not make the threshold showing of actual and substantial prejudice or complete miscarriage of justice, and need only demonstrate unlawful restraint under RAP 16.4.

> A DOSA is a treatment-oriented sentencing alternative. When it is revoked,
>
> two key liberty interests are taken away. First, the portion of the sentence that was suspended is converted back into a prison sentence. Thus, instead of being released from prison and placed on community custody for the second half of the sentence, that individual must serve that time in prison. Second, that individual is no longer eligible for the DOSA substance abuse treatment programs while in prison. So while the trial court found him or her appropriate for this treatment-oriented sentencing alternative, he or she will not have the opportunity to participate in the DOSA and community custody substance abuse treatment programs.

*In re Pers. Restraint of Schley*, 191 Wn.2d 278, 285-86, 421 P.3d 951 (2018) (plurality opinion). "[A] person facing a DOSA revocation 'has a significant liberty interest in the expectation of community custody as opposed to incarceration, including the ability to be with family and friends, be employed or attend school, and to live a relatively normal

life.'" *Id*. at 286 (quoting *In re Pers. Restraint of McKay*, 127 Wn. App. 165, 170, 110

P.3d 856 (2005)).

*DOSA revocation and community custody violations*

A fundamentally fair disciplinary proceeding requires notice, receipt of a written

statement of the evidence relied upon and the reasons for the disciplinary sanction, and an

opportunity to provide evidence and call witnesses when not unduly hazardous to facility

safety and correctional goals. *See In Pers. Restraint of Grantham*, 168 Wn.2d 204, 215-

16, 227 P.3d 285 (2010); *In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 396-97, 978

P.2d 1083 (1999).

"A person 'facing revocation of a suspended sentence has only minimal due

process rights.'" *Schley*, 191 Wn.2d at 286 (quoting *State v. Dahl*, 139 Wn.2d 678, 683,

990 P.2d 396 (1999)). The due process rights a person who faces a DOSA revocation are

those established by the United States Supreme Court for people facing revocation of

probation or parole in *Morrissey v Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d

484 (1972). *See Schley*, 191 Wn.2d at 286.

Individuals serving the community custody portion of their sentence have the

same liberty interests as a parolee. *See In re Pers. Restraint of McNeal*, 99 Wn. App. 617,

628, 994 P.2d 890 (2000). Therefore, when facing a community custody violation hearing

(including a DOSA revocation hearing), an offender is entitled to the minimum due

process protections set forth in *Morrissey*, 408 U.S. at 471. These include (1) written notice of the claimed violations, (2) disclosure of evidence, (3) an opportunity to be heard and to produce evidence, (4) the right to confront adverse witnesses (unless the hearing officer finds good cause not to), (5) a neutral and detached hearing officer, and (6) a written statement of the evidence relied on and the reasons for revoking community custody. The standard of proof for failure to comply with a community custody condition is preponderance of the evidence. *Id.*; WAC 137-24-030(10); WAC 137-104-050(6).

With regard to a DOSA, those "accused of failing to complete or having been administratively terminated from an in-custody substance abuse program are entitled to a hearing prior to the revocation or to the imposition of sanctions by [the DOC]." WAC 137-24-030(1). The specified rights in a DOSA revocation hearing are listed in WAC 137-24-040.

With regard to community custody violations, allegations of high-level violations result in the "right to a hearing prior to imposition of any sanction." WAC 137-104-040(3). The rights of an alleged violator called to a department hearing are specified in RCW 9.94A.737 and WAC 137-104-060.

*Due process*

Sabir argues that DOC's prison procedures and practices deprived him of due process. The DOC claims that Sabir waived his rights at the hearing. One of Sabir's due

9

process claims is that he was deprived of minimal due process when the hearing officer did not call his wife as a witness at his hearing. We agree and hold that Sabir is entitled to a new hearing because his minimum due process rights were violated when the hearing officer failed to call his wife as a witness.

Sabir requested his wife be contacted and, despite this request, the hearing officer never attempted to contact his wife. The DOC acknowledges Sabir stated that he wanted his wife to be called during the disposition phase of the hearing. Nevertheless, the DOC argues Sabir failed to ask the hearing officer to call his wife when he was given the opportunity to speak during the disposition phase. The DOC claims that the failure of Sabir to ask that his wife be called constituted a knowing and intelligent waiver of his rights. The DOC further argues that if any error occurred, then it was harmless, beyond a reasonable doubt, because Sabir would have been terminated with reclassification of the community custody portion of the DOSA regardless of his wife's testimony.

Individuals subject to a hearing for a DOSA revocation hearing have the right to "call witnesses." RCW 9.94A.737(6)(c)(iv). In a DOSA revocation hearing:

> (7) The offender may call witnesses to testify on his/her behalf at the hearing. The hearing officer may limit the number of witnesses and the scope of the testimony to matters relevant to the allegations and/or disposition.

WAC 137-24-030. Specifically, the person has the right:

10

(10) To have witnesses provide testimony on his/her behalf, either in person or in a witnessed statement/affidavit. However, outside witnesses may be excluded due to institutional concerns. The hearing officer may also exclude persons from the hearing upon a finding of good cause, or if the information to be presented by the witnesses is deemed irrelevant, duplicative, or unnecessary to the adequate presentation of the inmate's case. In addition, the hearing officer may exclude a witness from testifying at a hearing or may require a witness to testify outside of the offender's presence when there is a substantial likelihood that the witness will not be able to give effective, truthful testimony with the offender present. In either event, the offender may submit a list of questions to ask the witness(es).

WAC 137-24-040.

With a community custody violation hearing, it is a specified right for a person to "[h]ave witnesses provide written or oral testimony on the offender's behalf, unless the scope of testimony is limited or the witness is excluded by the hearing officer under WAC 137-104-050." WAC 137-104-060(10). The procedure in a community custody violation hearing as to witnesses is that:

(4) The parties may call witnesses to testify at the hearing.
(a) The hearing officer may exclude witnesses or limit the scope of testimony to matters relevant to the allegations and/or disposition.
(b) Witnesses may be excluded and testimony may be limited to maintain the safety and security of the facility, offender, staff, or others.
(c) Witnesses may testify outside the presence of the offender when there is substantial likelihood that the witness will suffer significant psychological or emotional trauma if the witness testifies in the presence of the offender, or when there is substantial likelihood that the witness will not be able to give effective, truthful testimony in the presence of the offender. The hearing officer will provide the offender an opportunity to submit questions to be asked of the witness.

11

> (d) The hearing officer will state the basis for limiting testimony or excluding witnesses on the record.

WAC 137-104-050.

The hearing that occurred alleged violations of community custody requirements from a July 2020 conviction, as well as a violation of the April 2021 DOSA. In both contexts, Sabir had a right to call witnesses. In keeping with this right, the hearing officer asked Sabir if he intended to call any witnesses. Sabir responded that he wanted to call his wife and provided the hearing officer with his wife's name and phone number. Sabir and the hearing officer discussed that his wife would provide testimony regarding how Sabir was doing in the community. Despite Sabir's explicit request to call his wife as a witness, the hearing officer did not call his wife. Sabir was deprived of minimal due process when his wife was not contacted during the hearing.

At no time did the hearing officer engage in a dialogue about excluding the witness Sabir asked to call. There was no discussion about a showing of good cause as to why Sabir's wife was not called. There was no discussion about whether the information Sabir's wife was going to present was irrelevant, duplicative, or unnecessary. No basis was offered to limit testimony or exclude Sabir's wife. Sabir's wife simply was not called.

Sabir is entitled to a new hearing because his minimum due process rights were violated when the hearing officer failed to call his wife as a witness. We do not review Sabir's other due process-related claims as the determination has been made that he is entitled to a new hearing and it is unlikely that those issues will reoccur on remand.

*Double jeopardy*

Sabir argues double jeopardy occurred when the DOC sanctioned him twice for the same conduct. The DOC responds, arguing that the guarantee against double jeopardy does not apply to sanctions imposed for violations of community custody conditions, and that even if double jeopardy does apply, the sanctions were for two separate violations.

"The constitutional guaranty against double jeopardy protects a defendant . . . against multiple punishments for the same offense." *State v. Noltie*, 116 Wn.2d 831, 848, 809 P.2d 190 (1991). "In order to violate federal and state double jeopardy standards, there must be multiple punishments for the 'same offense.'" *Id.* (quoting U.S. CONST. AMEND. V).

"[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey*, 408 U.S. at 480. "Parole is revoked for violation of the terms and conditions of parole and as part of the continuing consequences of the crime for which parole was granted. Parole revocation is not punishment for the subsequent events

13

which violate the parole and which may also constitute a separate crime." *Standlee v. Smith*, 83 Wn.2d 405, 407, 518 P.2d 721 (1974) (citing *People v. Morgan*, 55 Ill. App. 2d 157, 204 N.E.2d 314 (1965)).

Here, Sabir was sanctioned for separate conduct. In 2021, the DOC alleged Sabir failed to comply with conditions of release by possessing a controlled substance and traveling outside of Washington after he was arrested in Idaho. After a hearing, the DOC found Sabir guilty of these violations. In 2023, the alleged violations included that Sabir failed to obey all laws as required by his community custody terms when he was convicted of the 2021 Idaho crimes.

Sabir argues that he was sanctioned twice for the conduct that arose from the 2021 Idaho crimes: finding him guilty of the allegations at a 2021 hearing and once again at the 2023 hearing.[3] This argument fails because the 2021 adjudication happened before Sabir was convicted of the Idaho crime. As the hearing officer explained at the 2023 hearing, possessing a controlled substance and failing to obey all laws are two distinct sanctions. The 2021 sanction was because Sabir failed to comply with his community custody condition to not possess any controlled substances. The 2023 sanction was separate

---

[3] This argument was addressed at the 2023 reclassification hearing, and was in opposition to allegation number six, which is the only allegation to which Sabir pleaded not guilty.

because Sabir could not be sanctioned for not obeying all laws until he was found guilty by the Idaho court. Once the Idaho court found Sabir guilty of a crime, he could then be sanctioned for not obeying the law. Hence, the two sanctions were not based on the same conduct and Sabir's claim fails.

*Jurisdiction to revoke DOSA*

Sabir filed a statement of additional grounds to amend his initial petition to address the issue of community custody tolling. Sabir argued that the DOC lacked jurisdiction to revoke his DOSA. He claimed he was not serving community custody on his 2021 DOSA because he was still being supervised for his 2020 conviction, which ran consecutively with his DOSA. The DOC responded, arguing that the DOSA community custody default runs concurrently to any unexpired community custody term. Accordingly, the DOC claimed it lawfully supervised Sabir under his DOSA and had authority to do so.

RCW 9.94A.589(2)(a) provides:

Whenever a person while under sentence for conviction of a felony commits another felony and is sentenced to another term of confinement, the latter term of confinement shall not begin until expiration of all prior terms of confinement. However, *any terms of community custody shall run concurrently to each other, unless the court pronouncing the current sentence expressly orders that they be served consecutively*.

(Emphasis added.).

Here, Sabir was serving a community custody term for his 2020 conviction. While still serving his community custody term, Sabir was convicted of another crime, and a DOSA was imposed in 2021. As part of the DOSA, Sabir was ordered to serve a 27.75-month community custody term upon his release from confinement. Since the trial court did not expressly order the DOSA community custody term to be served consecutively, Sabir's DOSA community custody term ran concurrent to his 2020 community custody term. For these reasons, the DOC did not lack jurisdiction to revoke Sabir's DOSA.

*Issues not raised during DOC hearing*

Sabir also argues the DOC made clerical errors, misrepresentations, and fraudulent claims that were never addressed at his hearing or panel appeal. The DOC claims that any alleged error does not entitle Sabir to relief because his guilty pleas waived any factual challenges. We agree with the DOC.

Here, Sabir pleaded guilty to six of the seven alleged violations. Sabir waived any challenge to factual guilt for the alleged violations to which he pleaded guilty. *See In re Pers. Restraint of Francis*, 170 Wn.2d 517, 522, 242 P.3d 866 (2010) ("A guilty plea, by its nature, admits factual guilt—and thus waives any challenge on that ground."). The only alleged violation Sabir did not plead guilty to was allegation number six. In his petition, Sabir argued he had already pleaded guilty for failing to obey all laws when he was convicted of the 2021 Idaho charges. Other than his double jeopardy argument, Sabir

16

does not claim the DOC made clerical errors, misrepresentations, and fraudulent claims specific to allegation number six.

In summary, in pleading guilty to numerous violations, Sabir waived any factual challenges to those alleged violations. The only alleged violation Sabir did not plead guilty to, violation number six, is not a violation in which Sabir asserted a claim of clerical error, misrepresentation, or fraudulent claim. This asserted claim is denied.

*Abuse of process*

Sabir argues that the week of his July 2023 arrest, a corrections officer served allegations for community custody violations that had already been adjudicated. He also argued that the allegations were rewritten and served again, later, in September 2023. Sabir claimed that this constituted abuse of process. We disagree.

An action for "abuse of legal process will lie even though there was probable cause for issuance of the process and whether or not the proceedings terminate in plaintiff's favor. Thus it is distinguished from an action for malicious prosecution." *Fite v. Lee*, 11 Wn. App. 21, 27, 521 P.2d 964 (1974). The two essential elements for abuse of process are "(1) the existence of an ulterior purpose—to accomplish an object not within the proper scope of the process—and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings." *Id*.

17

Here, Sabir claims that an abuse of process occurred and cited a case in his petition that involved the tort of abuse of process. However, a personal restraint petition is not the vehicle to litigate tort claims. *In re Pers. Restraint of Sappenfield*, 138 Wn.2d 588, 595, 980 P.2d 1271 (1999) ("This court can order only the removal of the illegal restraint."). Regardless, Sabir failed to show the existence of an ulterior purpose to satisfy the first element of abuse of process. We deny this claim as Sabir "fails to present an arguable basis for relief in law or in fact, given the constraints of the personal restraint petition vehicle." *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 686-87, 363 P.3d 577 (2015).

*Reclassification decision*

In the 2023 notice of alleged violations, seven violations were alleged by the DOC. Six of the allegations were the result of 2023 conduct. One was the result of 2020 conduct. Sabir argued that the hearing officer premised the decision to reclassify his DOSA on conduct that occurred before his DOSA community custody term commenced. Sabir claimed that it was patently unfair to revoke his DOSA based on conduct that happened in 2020 before he signed the DOSA contract. The DOC argues that the reclassification was not based on the one 2020 violation, and that Sabir failed to show that the DOC may not address non-DOSA violations at a hearing that results in a DOSA being reclassified. The DOC claims that the hearing officer explained in the oral ruling

18

that reclassification of the DOSA was based on the 2023 violations, not the 2020

violation. We agree with the DOC.

In the hearing officer's oral ruling, the revocation of Sabir's DOSA was stated to

be largely based on his new convictions, with the hearing officer stating:

> I am going to revoke your DOSA. Um, on the old one. On the cause, this is
> on the 21-1-00310-32, I am going to revoke your DOSA. I just don't feel
> like 15 days addresses the behavior. It, it's very concerning, its offense
> cycle behavior, you know, a return to prior behavior so, um, offense cycle,
> there are new violations and the seriousness of those new law violations
> possession of a firearm and the possession of the fentanyl.

Response of the DOC at 252.

Sabir fails to demonstrate that the DOC did not have the authority to address the

2020 violation at the hearing. As Sabir pointed out, "[t]he hearing officer may consider

factors such as prior documented behavior, infraction history, mental status, and overall

facility and program adjustment when determining an appropriate sanction(s)." WAC

137-28-350(3). Therefore, a hearing officer may look to Sabir's prior behavior when

making a determination for sanctions. More importantly, the hearing officer's focus was

on the new 2023 conviction, which happened while Sabir was serving the 2021 DOSA.

For these reasons, we deny this claim

No. 40114-6-III
*In re Pers. Restraint of Sabir*

CONCLUSION

We grant Sabir relief in part. Sabir was not afforded due process and is entitled to a new hearing to be afforded a reasonable opportunity to present witness testimony. We deny relief for his remaining claims. The revocation order is vacated, and we remand for a new hearing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____
Staab, A.C.J.

_____
Fearing, J.

20